979 A.2d 209

**MONTGOMERY COUNTY, Maryland**

v.

**Valerie J. WILLIS.**

No. 3081, Sept. Term, 2007.

Court of Special Appeals of Maryland.

Aug. 28, 2009.

**516**

Wendy B. Karpel (Leon Rodriguez, County Attorney, Marc P. Hansen, Edward B. Lattner, Karen L. Federman Henry on the brief), Rockville, MD, for the Appellant

Douglas M. Gross (Chirumbole, Gross & Conrad P.C. on the brief), Gaithersburg, MD, for Appellee.

Panel: HOLLANDER, MEREDITH, and THIEME, RAYMOND G., JR., (Retired, specially assigned), JJ.

HOLLANDER, J.

In this appeal, we must determine whether an employer is entitled to judicial review of an Order issued by the Workers' Compensation Commission (the "Commission"), denying the employer's request to refer a worker's compensation claim to the Insurance Fraud Division (the "Division") of the Maryland Insurance Administration.

Valerie Willis (the "Employee" or the "Claimant"), appellee, a former Montgomery County Police Officer, obtained compensation benefits for a work related injury sustained in July 2001. Montgomery County (the "County" or the "Employer"), appellant, claimed that after the work-related event, but before benefits were awarded, the Employee sustained a non-work related injury that she failed to disclose. On that basis, pursuant to Md.Code (2008 Repl.Vol.), § 9–310.2 of the Labor and Employment Article ("L.E."), the County filed a "Request for a Hearing for Referral to the Maryland Insurance Fraud Division." After an evidentiary hearing, the Commission determined there was insufficient evidence of fraud, and declined to refer the matter to the Division. Thereafter, the County sought judicial review in the Circuit Court for Montgomery County. The Claimant moved to dismiss, arguing, *inter alia,* that the Commission's Order was not appealable. The circuit court agreed and dismissed the appeal.

This appeal followed. The County presents one question for our review, which we quote:

When an employer seeks reimbursement of workers' compensation benefits based on its belief that an employee

wrongfully obtained those benefits, is the Commission's determination subject to review in the circuit court as a final order of the Commission? [1]

For the reasons that follow, we shall reverse and remand to the circuit court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Valerie Willis, a former Montgomery County Police Officer, injured her left knee during a training exercise on July 20, 2001. Despite the injury, Ms. Willis continued to work. She injured her knee again during "a shooting scenario" in August 2001, for which she did not seek medical treatment. Rather, she cared for her knee herself while continuing to work. Then, on December 31, 2001, appellee injured her knee for a third time. On this occasion, however, the injury was not work-related. Appellee was diagnosed with a ruptured anterior cruciate ligament ("ACL"), for which she underwent surgery on January 30, 2002.

On January 26, 2002, a few days before appellee's first surgery, Willis's direct supervisor, Corporal Ed Shropshire, filed with the Commission an "Employer's First Report of Injury or Illness" for appellee. He listed July 20, 2001, as the date the Employer had been notified of appellee's injury.

On March 4, 2002, the Claimant signed a form titled "Employee's Claim Workers' Compensation Commission," in which she represented that she had twisted her left knee during a training exercise on July 20, 2001, and that she had given notice to Lieutenant Rodney Hill on that date. Appellee filed a "Corrected Claim" with the Commission on April 21, 2002, indicating that she injured both her left knee and her back on July 20, 2001. The claim listed July 21, 2001, as the "1st day

---

1. In our view, the question, as phrased, does not accurately capture the issue presented, because the Employer did not file a claim for reimbursement. This is discussed, *infra*.

2. Our summary of the facts derives largely from the evidence presented at the hearing held by the Commission on April 17, 2007.

unable to work," and reflected that Willis returned to work on July 26, 2001. Neither the initial claim nor the corrected claim referred to the incident of December 31, 2001. Nor did the County have any records pertaining to the December 2001 occurrence. According to the County, the claim was "accepted" but "no medicals were forthcoming."

On June 4, 2002, the Commission issued an Order, finding that Willis sustained an accidental injury "arising out of and in the course of employment" on July 20, 2001. But, the Commission ordered that the claim for compensation "be held pending until such time as the nature and extent of the claimant's disability, if any, can be determined."

Appellee had a second knee surgery on September 26, 2005, to repair a torn meniscus in the left knee, for which the County paid the medical expenses. Willis was awarded temporary total disability ("TTD") from September 1, 2005, through February 23, 2006.[3] In April 2006, appellee sought TTD benefits dating to 2002. According to the County, at that point it obtained medical records for the period prior to June 2002, which "revealed an intervening event that was non work related."

On November 20, 2006, through the Montgomery County Self–Insured Fund, appellant filed with the Commission a form titled "Request For A Hearing For Referral To Maryland Insurance Fraud Division" (the "Petition"). The preprinted form stated:

This form may be filed by any party at any time.

The Commission shall refer the case on the person named below to the Insurance Fraud Division in the Maryland Insurance Administration where the Commission finds, after a hearing, that a party requesting the referral has carried the burden of establishing by a preponderance of the evi-

---

**3.** On February 26, 2006, the County sent appellee a form titled "Termination of Temporary Total Disability Benefits," informing her that her last compensation check would include benefits through February 23, 2006. It explained that her benefits were being terminated because she missed an "independent medical exam appointment on 2/24/06."

dence that the named person knowingly affected or knowingly attempted to affect the payment of compensation, fees, or expenses under Title 9 of the Labor Law by means of a fraudulent representation.

The undersigned alleges that the person named below violated section 9–310.2(a) of the Labor & Employment Article and requests a hearing before the Commission.

The Commission held an evidentiary hearing on the Petition on April 17, 2007. The Employer's attorney represented that the matter concerned a claim of "Fraud." Explaining "the basis of the fraud," the County's lawyer said:

[I]n May of 2002, . . . [appellee] indicated that she twisted her knee on the job in July of 2001, the claim was accepted at that time. No medicals were forthcoming. The medicals we had, that we later received very soon thereafter, was June 24th, 2002 and beyond. So the claim was accepted.

Then in April of 2006, she made a claim for T.T.D. back in 2002, a back claim for temporary total disability. At that point, we were able to secure the medicals predating June of 2002. Those medicals revealed an intervening event that was non work related. That was the first time that the County was aware that there was a non work-related accident on or about December 30th or 31 st of 2001. And then we also found at that time that she had a surgery, an ACL reconstruction, related to that incident in January of 2002. That surgery was never paid for by the County, but a subsequent surgery of 9/26/2005 was paid by the County and the T.T.D. related to that.

And that's the basis of the fraud that we were never informed of the—and there was no treatment from July of 2001 until January of 2002, until the intervening event. And the County was unaware and never informed of the intervening event.

Willis testified that she injured herself while on duty on July 20, 2001, while carrying a bullet proof shield. She recalled that she planted her foot, twisted, heard a popping sound, and could not walk for fifteen or twenty minutes.

According to appellee, she promptly notified her supervisor, Lieutenant Rodney Hill, but she did not file a claim for compensation at that time. She explained that she did not miss work because she had three days off and treated her knee while at home, with ibuprofen and ice. As a result of her knee injury in July 2001, Willis was temporarily placed on light duty.

Appellee recounted that she sustained a second injury while on duty in August 2001:

> [W]e were doing a shooting scenario where we were required to jump up out of the car, run up to the range and engage bad guys, for lack of a better term. When I hit the cement where I had to kneel behind a barrier, my left leg went out from underneath me in a slipping motion and I fell to the ground . . . .

Willis did not seek medical treatment at that time, nor did she miss work. Again, she self-treated with ice and ibuprofen.

Then, on December 31, 2001, Willis injured her knee for a third time, when she jumped off a pick-up truck while "at church." She was not on duty at the time. Willis recounted that she "hopped off" the truck and her "knee twisted," which caused "excruciating pain, extreme swelling." Willis sought medical attention from her primary care physician, Dr. David Harding, on January 2, 2002. The next day, she was seen by Dr. Sheldon Mandel, an orthopaedic surgeon. His report reflects that Willis only mentioned her injury of December 31, 2001.

According to appellee, shortly after her third knee injury, she spoke with her supervisor, Lieutenant Hill. As a result of that conversation, Willis consulted Dr. David Higgins, an orthopaedic surgeon, on January 17, 2002, and an attorney. As noted, she filed a workers' compensation claim on March 4, 2002, pertaining to her injury of July 20, 2001.

Dr. Higgins diagnosed appellee with a torn ACL, a torn medial meniscus, and a torn lateral meniscus. He performed

knee surgery on appellee on January 30, 2002. Willis did not ask the County to pay for the surgery, nor did it do so.

On cross-examination, the following ensued:

[EMPLOYER'S COUNSEL]: And the first time you went to the doctor for your knee problems was on January 2nd, 2002; is that—

[EMPLOYEE]: That is correct. That was Dr. Harting [sic].

[EMPLOYER'S COUNSEL]: And, at that point, you gave a history of jumping off of the truck; is that correct?

[EMPLOYEE]: That's correct. My knee was so swollen, I couldn't get a pair of jeans on.

\* \* \*

[EMPLOYER'S COUNSEL]: And when you saw [Dr. Mandel on January 3, 2002], you told him about the truck incident [which occurred December 31, 2001] and denied any prior injuries; is that correct?

[EMPLOYEE]: He didn't ask me about any prior injuries.

\* \* \*

[EMPLOYER'S COUNSEL]: When you were evaluated by Dr. [Clifford] Hinkes, or [sic] an independent medical examination on March the 31st, 2006 at the request of the County, you told him that you did not have any prior—any subsequent—

[EMPLOYEE]: He never asked me that question.

[EMPLOYER'S COUNSEL]: And you never told him of the December 2001 injury; is that correct?

[EMPLOYEE]: I never told him. He never asked me. He asked me what pain I was having that day and what my issues were at that time, and that's what I told him about.

[EMPLOYER'S COUNSEL]: You had another surgery to your knee in September of 2005?

[EMPLOYEE]: Yes, I did.

[EMPLOYER'S COUNSEL]: And you claim that that was related to your accident in July of 2001; is that correct?

[EMPLOYEE]: That's correct.

* * *

[EMPLOYER'S COUNSEL]: In April of 2006, you sought temporary partial disability for the period that you were off of work in 2002; is that correct?

* * *

[EMPLOYEE]: That's probably one of the times we asked for that . . . .

Notably, Dr. Higgins's report of January 17, 2002, reflects that Willis reported the injuries she sustained in July, August, and December of 2001. Dr. Higgins stated:

HISTORY: The patient is a 42–year–old Montgomery County police officer with complaints of left knee pain with multiple injuries, the first being in July 2001, on the job as a police officer. She had a minimal amount of swelling with pain that gradually resolved. She had another injury at the end of August 2001, with reoccurrence of her twisting injury and she had resolution on the pain with minor swelling. The third injury was on 12/31/01, when she jumped down out of a pickup truck and had another twisting injury to her left knee. She had pain and swelling. This was the most amount of swelling she has had over the three injuries.

Dr. Higgins also wrote a letter to appellee's attorney, dated March 14, 2002, stating:

I am writing concerning Ms. Valerie Willis's left knee injury. She sustained her first injury in 07/01 while on duty as a police office [sic] when she sustained a twisting injury to her left knee. She did have swelling at that time. It is my opinion within a reasonable degree of medical certainty that Ms. Valerie Willis tore her left knee anterior cruciate ligament while on duty as a police officer with a twisting injury in 07/01. She had continued symptoms since that initial injury in 07/01. I hope this clears up any confusion concerning her knee injury.

On March 31, 2006, Dr. Clifford Hinkes evaluated Willis at the request of the County. His report chronicled appellee's medical care between 2002 and 2006.[4]

---

4. According to the report, in 2003 Willis "began to complain of some lower back complaints and left leg sciatica." She continued to see Dr.

Joan Fitzwater, a Senior Workers' Compensation Adjuster for The Schaffer Companies, Ltd., was one of several people who handled appellee's compensation claim for the County. At the time of the hearing, she had worked for The Schaffer Companies for two years, and worked the previous ten years "for the predecessor adjusting companies for the County."

Ms. Fitzwater stated that it was not until 2006 that the County received appellee's medical records for any period prior to June 2002. She related that the adjusting company asked for those records because appellee's attorney was seeking a period of TTD, and the company did not have documentation to support it.

Michael B. Willis, appellee's husband, had worked as a police officer for the Montgomery County Police Department for 23 years. He testified that he learned in late July or early August of 2001 that his wife had injured her knee in July 2001. Mr. Willis recalled that from July 2001 through the end of December, his wife would "periodically complain that [her knee] was swollen. You could see her limp from time to time, depending upon the weather . . . It was apparent that she was in discomfort."

At the time of the hearing, Rodney Hill worked as an Assistant State's Attorney for Baltimore County. In July 2001, he was a Lieutenant with the Montgomery County Police Department, and in the "supervisory chain of command of Officer Valerie Willis . . . ."[5] He recalled that Willis made "a

---

Higgins for physical therapy through 2004. On March 31, 2005, she saw Dr. Montague Blundon, an orthopedic surgeon. On April 11, 2005, appellee had an MRI "showing possible tears of the medial meniscus and some degenerative changes" in her left knee. On May 11, 2005, Dr. Blundon recommended arthroscopic surgery of the left knee. On August 8, 2005, appellee saw Dr. Stephen Michaels, who suggested a second "operative procedure on the left knee." As of March 31, 2006, appellee was going to physical therapy with Dr. James Clarke and continuing to see her primary care physician, Dr. Harding.

5. Hill's testimony was consistent with his earlier "Affidavit on Behalf of Valerie Willis Before the Maryland Workers' Commission Hearing Examiner," filed on February 2, 2007.

comment" after her initial injury in July 2001, although he did not remember "too much specific detail as to . . . what exactly it was she said . . . ." The following exchange is relevant:

[EMPLOYEE'S COUNSEL]: Did she report to you at all that day [i.e., July 21, 2001] whether or not she had injured her left knee?

[HILL]: I vaguely—again, I vaguely remember her telling me she had been injured. If she said it was the left knee, at this point—I definitely remember her saying she injured herself. I can remember saying, okay, and pretty much from what I recall, that was that. After that I remember having a subsequent conversation with her.

[EMPLOYEE'S COUNSEL]: When was that?

[HILL]: It might have been a few weeks, might have been about a month. It wasn't that long afterwards.

[EMPLOYEE'S COUNSEL]: And what was the nature of that conversation?

[HILL]: She was assigned to the desk. I just happened to be going by the desk and saw some plain clothes. I said, what are you doing at the desk? She said, well, remember I injured my knee . . .

\* \* \*

She had mentioned to me a subsequent injury as well . . . I said, well, did you take care of the paperwork, necessary paperwork? She said, what are you talking about? I said, you have to do your first report of injury and you have to do your worker's compensation. I went into all the detail about it . . . now, I take off my lieutenant hat and put on my lawyer hat. You need to protect yourself. You need to do X, Y, and Z and make sure you do this. Probably said it 200 times, you know, get your worker's compensation lawyer, do this, do that, protect yourself. You have a legitimate injury, you know. I said, that's why the law is in place.

Appellant's counsel asked Hill if he was aware that "function code 350" requires an employee to report an injury immediately to a supervisor. Hill stated that he was aware

and he also knew that it was a supervisor's "responsibility to insure the completion of all the required reports prior to the end of [their] tour of duty." However, he clarified that he was not Ms. Willis's direct supervisor.

On May 1, 2007, the Commission issued an Order that stated:

Hearing was held in the above claim at Beltsville, Maryland on April 17, 2007 on the following issues:

1. Fraud

2. Penalties and Fees

The Commission finds on the first issue presented that no fraud on the part of the claimant or her counsel has been proven. The Commission finds on the second issue presented that no fees, costs or penalties are appropriate.

It is therefore, this 1 st day of May, 2007, by the Workers' Compensation Commission ORDERED that the above-entitled claim be reset only upon request.

Thereafter, on May 17, 2007, the County sought judicial review in the circuit court, pursuant to L.E. § 9–737. Appellee filed a "Pre–Trial Statement" on November 16, 2007, asserting that the Commission "was correct in its findings and the Claimant committed no fraud arising out of her accidental personal injury on July 20, 2001." The County subsequently filed a "Pre–Trial Statement of The Petitioner," in which it averred that Ms. Willis "obtained benefits without properly disclosing an intervening injury of December 30–31, 2001."

On December 21, 2007, Willis filed a Motion for Summary Judgment/To Dismiss, arguing, pursuant to L.E. § 9–737, that the Order of the Commission was not appealable because the decision—not to refer the case to the Division—did not grant or deny a benefit to appellant under the Workers' Compensation Act. She also averred that the County failed to "allege facts sufficient to prove that [appellee] made a fraudulent representation."

In its opposition to Willis's motion, the County asserted, in part:

The Commission did not find fraud, and therefore declined to make the referral set forth in Labor & Employment Article, § 9–310.2. Had the Commission found that the Claimant "knowingly affected or knowingly attempted to affect the payment of compensation, fees or expenses . . . by means of a fraudulent representation," the Commission would have referred the matter to the Insurance Fraud Division. **Necessarily,** the Commission would have also ordered the Claimant to reimburse the County for the benefits that she knowingly obtained and to which she was not entitled. This would be done pursuant to § 9–310.1. That Section is not discretionary—the statute says that, if the County establishes that she knowingly obtained benefits to which she is not entitled, "the Commission **shall** order the person to reimburse . . . ."

If the Commission had found fraud, not only would the referral of § 9–310.2 take place but the reimbursement of § 9–310.1 would have been ordered. Therefore, the Commission's decision denied the County of a benefit, and is a "final order."

In addition, § 9–737 states that an "employer . . . or any other interested person aggrieved by a decision of the Commission . . . may appeal from the decision of the Commission provided the appeal was filed within thirty days after the date of mailing the Commission's Order." As a party that was aggrieved by the Commission's decision, the County is entitled to this appeal. The simply [sic] statutory language provides for such judicial review. Under these circumstances, the County is entitled to appeal the decision of the Commission.

The court held a hearing on January 24, 2008. The following colloquy is relevant:

THE COURT: [A]s I read [L.E. § ] 9–310.1, I understand it to be that the County would have been entitled to recover monies improperly paid to your client if fraud had been found. Why is that not a benefit under the act?

[EMPLOYEE'S COUNSEL]: Okay. For two reasons. One, it's a separate section. And actually 9–310.1 never mentions fraud. It's a completely different standard. [L.E. § ] 9–310[.1] is just if they knowingly obtain benefits to which they are not entitled. There's nothing about a fraudulent representation or anything else . . . the decision in this case was to not refer this case to the insurance division, fraud division. That does not in any way address benefits
. . . .

THE COURT: So if there's a finding of fraud, it doesn't follow by necessity that the—Would it be the Commission that would order this back payment?

[EMPLOYEE'S COUNSEL]: It doesn't necessarily follow that. They [i.e., the County] would have to raise that under the separate section . . . .

\* \* \*

THE COURT: So if the decision is, okay, I find fraud, I'm going to refer it, there is no award of a benefit is your argument. And it would be for that agency to which it was referred. Who is that? To whom was it referred back to?

[EMPLOYEE'S COUNSEL]: It's actually to the—technically it's the Insurance Fraud Division in the Maryland Insurance Administration.

According to appellee, because the Commission did not rule on reimbursement in its Order of May 1, 2007, the ruling was not "a final appealable decision." Appellee's counsel emphasized that the Commission was merely asked to decide whether the case should be referred, and he stated: "There are no benefits being decided by that . . . ." Therefore, he claimed the circuit court lacked jurisdiction to hear "the subject matter of this appeal."

The County's lawyer argued:

[L.E. § ] 310.2 is what the Commission makes you go through first . . . . And the standard is preponderance of the evidence, "a person knowingly affected or knowingly attempted to affect the payment of compensation, fees or expenses by means of a fraudulent representation." By

necessity, if they were to find that: 310.1 says, "if it is established by a preponderance of the evidence that a person has knowingly obtained benefits under this title to which the person is not entitled, the Commission shall order the person to reimburse the insurer." It's not may. It's not discretionary with the Commission. So, if they find that there is a referral, they've already found that there's a preponderance of the evidence that she knowingly affected or knowingly attempted to affect payment of compensation by means of a fraudulent representation. If they find that, then under 310.1, they shall order the reimbursement so it's tied together.

Without citation to any authority, the County's lawyer insisted that the County could not obtain reimbursement under L.E. § 9–310.1 unless it first proceeded under "what the Commission terms their 'referral statute,'" i.e., L.E. § 9–310.2. Appellant's counsel said: "I don't think there's any case law on it. It just doesn't come up that often. However, I mean, all I have is the language of the statute that says if you got [that] to which you're not entitled, the Commission shall order reimbursement." Appellant's counsel continued:

You have to file for fraud and the Commission decides really both issues together. Now we've lost both issues. I understand that. The Commission decided no referral. It didn't say anything about reimbursement because they didn't have to. That's part of that decision. The Commission makes you go through that. If we were to say that failure . . . to decide that is not appealable—. . . if we were to say that refusing to refer the case is not appealable, then this can never be appealable because the Commission always decides the referral issue first. And if they find no referral, then they're not going to order reimbursement.

By Opinion and Order dated January 25, 2008, the circuit court granted appellee's motion for summary judgment, upheld the Commission's Order of May 1, 2007, and dismissed the appeal. The court stated:

As a general rule, an action for judicial review of an administrative order will lie only if the administrative order is final. *See Holiday Spas v. Montgomery County*, 315 Md. 390, 395, 554 A.2d 1197, 1199 (1989). " 'Final order' or 'final action,' within the ambit of the Workmen's Compensation Law, means an order or award made by the Commission in the matter then before it, determining the issues of law and of fact necessary for a resolution of the problem presented in that particular proceeding *and* which grants or denies some benefit under the Act." *Great American Ins. v. Havenner*, 33 Md.App. 326, 332, 364 A.2d 95, 99 (1976).

Pursuant to MD. CODE ANN., LAB & EMPL. § 9–310.1, if it is established by a preponderance of the evidence that a person has knowingly obtained benefits to which she is not entitled, the Commission shall order the person to reimburse the self-insured employer for the amount of all benefits improperly received. The County argues that the Commission's order finding an absence of fraud denies it a particular benefit under the Act (i.e. reimbursement for money improperly paid to Respondent) and thus entitles it to appellate review. The court disagrees.

Although the Workers' Compensation Act fails to define the term "benefit," this court attributes significance to the fact that the "benefits" set forth in Subtitle 6 of Title 9 conceive of an award accruing in favor of a covered employee, not a self-insured employer. *See* MD. CODE ANN., LAB. & EMPL. § 9–601, *et seq.*

Even if the term "benefit" is held to be ambiguous in this context, the Maryland Court of Appeals has repeatedly held that "[The Workers' Compensation Act] is to be construed as liberally in favor of injured employees as the Act's provisions will permit so as to effectuate its benevolent purpose as remedial social legislation. Any uncertainty in the meaning of the statute should be resolved in favor of the claimant." *Lovellette v. Mayor and City Council of Baltimore*, 297 Md. 271, 282, 465 A.2d 1141, 1148 (1983).

In light of these considerations, the court finds that the Commission neither granted nor denied a benefit under the

Act, as envisioned by the legislature. It merely found that no fraud on the part of the claimant or her counsel had been proven. Accordingly, the May 1, 2007, order was not a "final decision" for purposes of appellate review.

## DISCUSSION

### I.

Before addressing the parties' contentions, it is helpful to review relevant portions of the Labor and Employment Article and Insurance Article of the Maryland Code.

L.E. § 9–310.1 and L.E. § 9–310.2 state, in part:

**§ 9–310.1. Benefits wrongfully obtained; reimbursement; interest.**

(a) *Reimbursement.*—In any administrative action before the Commission, if it is established by a preponderance of the evidence that a person has knowingly obtained benefits under this title to which the person is not entitled, the Commission shall order the person to reimburse the insurer, self-insured employer, the Injured Workers' Insurance Fund, the Uninsured Employers' Fund, or the Subsequent Injury Fund for the amount of all benefits that the person knowingly obtained and to which the person is not entitled.

**§ 9–310.2. Referral of certain fraud cases to Insurance Fraud Division; reports.**

(a) *Referral of certain fraud cases to Insurance Fraud Division.*—In any administrative action before the Commission, if it is established by a preponderance of the evidence that a person knowingly affected or knowingly attempted to affect the payment of compensation, fees, or expenses under this title by means of a fraudulent representation, the Commission shall refer the case on the person to the Insurance Fraud Division in the Maryland Insurance Administration.

L.E. § 9–1106 is also pertinent. It provides:

**§ 9–1106. False claims.**

(a) *Prohibited act.*—A person may not knowingly affect or knowingly attempt to affect the payment of compensation, fees, or expenses under this title by means of a fraudulent representation.

(b) *Penalties.*—A person who violates this section, on conviction:

(1) is subject to the penalties of § 7–104 of the Criminal Law Article; and

(2) may not receive compensation, fees, or expenses under this title.

■ Notably, L.E. § 9–1106 "is a criminal statute . . . ." *Kelly v. Consolidated Delivery Co.,* 166 Md.App. 178, 188, 887 A.2d 682 (2005), *cert. denied,* 393 Md. 161, 900 A.2d 206 (2006). Thus, "before the Commission may enforce the penalty" under L.E. § 9–1106(b)(2), the claimant must be convicted by a court, "as the Commission is without the power to convict anyone." *Id.*[6]

L.E. § 9–737, which is central to this case, states:

### § 9–737. Judicial Review—Authorized.

An employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commission, including the Subsequent Injury Fund and the Uninsured Employers' Fund, may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the mailing of the Commission's order by:

1) filing a petition for judicial review in accordance with Title 7 of the Maryland Rules . . . .

Md.Code (2003 Repl.Vol., 2008 Supp.), § 2–401 of the Insurance Article ("Ins.") provides:

### § 2–401. Definitions.

---

**6.** The Legislature enacted HB 236 in 1994. It amended L.E. § 9–1106 to its current version. *Kelly,* 166 Md.App. at 187, 887 A.2d 682. *See* 1994 Md. Laws, Ch. 540.

(a) *In general.*—In this subtitle the following words have the meanings indicated.

(b) *Fraud Division.*—"Fraud Division" means the Insurance Fraud Division in the Administration.

(c) "Insurance fraud" means:

(1) a violation of Title 27, Subtitle 4 of this article;

(2) theft, as set out in §§ 7–101 through 7–104 of the Criminal Law Article;

(i) from a person regulated under this article; or

(ii) by a person regulated under this article or an officer, director, agent, or employee of a person regulated under this article; or

(3) a violation of § 9–1106 of the Labor and Employment Article . . . .

Ins. § 2–405 sets forth the general powers and duties of the Division. It states, in part:

**§ 2–405. General powers and duties of Fraud Division.** The Fraud Division:

(1) has the authority to investigate each person suspected of engaging in insurance fraud;

(2) if appropriate after an investigation:

(i) shall refer suspected cases of insurance fraud to the Office of the Attorney General or appropriate local State's Attorney to prosecute the person criminally for insurance fraud;

\* \* \*

(iv) shall notify the Workers' Compensation Commission of suspected cases of insurance fraud referred to the Office of the Attorney General or appropriate local State's Attorney under subparagraph (i) of this paragraph that involve the payment of compensation, fees, or expenses under the Workers' Compensation Law . . . .

Some legislative history is also useful. L.E. § 9–310.1, initially House Bill 673, became effective on October 1, 1993. *See* 1993 Md. Laws, Ch. 171. The Bill amended L.E. § 9–1106 ("False claims") to "increase the penalty for the purpose of

deterring the abuse of the workers' compensation benefits system, and to provide the Commission with the authority to order an individual wrongfully obtaining benefits to reimburse the payor of those benefits." *Kelly*, 166 Md.App. at 186, 887 A.2d 682. Although both amendments, as originally proposed, were to be included in L.E. § 9–1106, the reimbursement provision was ultimately set forth in a separate statute, codified at L.E. § 9–310.1. *Id.* at 186–87, 887 A.2d 682.

An analysis of HB 673, prepared by the House Economic Matters Committee, stated that the Bill "requires the Commission to order the person to reimburse the insurer, self-insured employer ... if the evidence indicates benefits were fraudulently obtained. The reimbursement must include the benefits received and costs incurred." The title to Chapter 171, Laws of 1993, states: "Workers' Compensation–False Claims–Penalty and Reimbursement." [7] The bill was proposed

> FOR the purpose of altering the penalty for violating the prohibition against knowingly obtaining or attempting to obtain compensation to which a person is not entitled; providing that if it is established by a preponderance of the evidence that a person knowingly obtained any benefits to which the person was not entitled, the Workers' Compensation Commission shall order the person to reimburse the amount of the benefits; providing that an order of reimbursement shall include a certain interest; and generally relating to false claims under the workers' compensation law.

As we explained in *Kelly*, 166 Md.App. at 188, 887 A.2d 682, under L.E. § 9–310.1 the Commission "has the authority ... to hold a hearing for the purpose of determining whether a fraud has been committed, and to order reimbursement of any

---

7. In *Suter v. Stuckey*, 402 Md. 211, 231, 935 A.2d 731 (2007), the Court observed: "The context of a statute is an important aid to our determination of Legislative purpose." The Court noted that the context is "informed by 'a bill's title and function paragraphs ....' " *Id.* (citation omitted).

benefits obtained by fraud." However, *Kelly* did not discuss' L.E. § 9–310.2.

L.E. § 9–310.2 was first introduced as Senate Bill 639 on February 6, 2004.[8] *See* 2004 Md. Laws, Ch. 471. It became effective on July 1, 2004. *Id.* SB 639 also contained changes to Ins. § 2–401, which defines "Insurance Fraud." Initially, when the changes were proposed, Ins. § 2–401(c)(3) stated that insurance fraud included "knowingly obtaining benefits to which a person is not entitled under § 9–310.1 of the Labor and Employment Article." When the Bill was adopted, however, the language referring to L.E § 9–310.1 was deleted and L.E. § 9–1106 was added to the definition. *See* page 17, *supra,* quoting Ins. § 2–401(c)(3).

We turn to the parties' contentions.

## II.

▮ The County maintains that Willis wrongfully obtained compensation benefits, and for that reason it asked the Commission to refer the matter to the Division, pursuant to L.E. § 9–310.2. In its view, appellee's "omission of the December [2001] injury from the information she submitted [in 2002] with her claim for workers' compensation benefits directly impacted the finding of [a] causal relationship between her work-related injury in July 2001 and the surgery she underwent in 2005, along with the accompanying temporary total disability benefits." It argues that the Commission's denial of the County's request for referral to the Division is subject to judicial review "as a final order of the Commission," because it "is a final substantive disposition of the case." In this regard, the County relies on L.E. § 9–737, which permits an appeal by an employer who is aggrieved by a decision of the Commission.

According to the Employer, the circuit court improperly applied a "narrow interpretation" of L.E. § 9–737 that "effec-

---

8. Initially, the proposed language was to be added to L.E. § 9–310.1. These additions were later struck and reworded as L.E. § 9–310.2.

tively adds language to the statute by relying upon the grant or denial of a benefit, rather than the aggrievement of a party." It argues: "Not only does the statute fail to limit judicial review to grants or denials of benefits to an employee, but the cases interpreting [L.E. § 9–737] support the ability of the employer to obtain judicial review." The County elaborates: "The reference to a 'benefit' as part of the appealable order has served as a mechanism to distinguish a final decision from the various interim decisions that the Commission may make regarding procedural or other issues." So long as a decision is "equivalent" to the grant or denial of a benefit, argues appellant, it satisfies the requisites for review.

Moreover, appellant suggests that its Petition concerned benefits; it contends that it was entitled to—and sought—reimbursement of workers' compensation benefits that appellee "wrongfully obtained." The County asserts:

> [B]enefits had been awarded and paid to the employee. The challenge to the propriety of that award had an effect on whether the employee could retain those benefits or would have to reimburse the County for some or all of the compensation paid. When the Commission determined that the employee had not obtained the workers' compensation benefits wrongly, that decision was a final order that disposed of the pending issues before the Commission and had the effect of granting the benefits that the County questioned.

Further, the County argues:

> [T]he Commission's determination that no fraud occurred created a direct impact on the employer—absent the finding of fraud, the employee keeps the benefits awarded, even though they may have been wrongfully obtained through the incomplete information available to the County. The Commission's decision was not in the County's favor, and the County has the right to challenge that decision in the Circuit Court. The evaluation of the evidence under the fraud section necessarily accompanies the analysis of the evidence for purposes of ordering a reimbursement of bene-

fits. The Circuit Court should have heard testimony and argument on appeal from the Commission in this case.

Noting that L.E. § 9–310.1 (regarding reimbursement) and L.E. § 9–310.2 (regarding fraud) are interrelated, with similar "evidentiary thresholds," the Employer asserts: "Although the County filed a form requesting a hearing for referral to the Maryland Insurance Fraud Division, this did not limit the scope of the issue before the Commission in a manner that excluded consideration of the reimbursement provision of the law." [9] It states:

> [T]he same testimony and evidence could lead the Commission to find fraud or to determine that, although fraud was not shown, the benefits were wrongfully obtained by virtue of omitting evidence that affected the finding of causation .... Once the Commission determined to hold a hearing, it was obligated to refer the matter to the Insurance Fraud Division if the evidence established that a misrepresentation had been made and was the basis for an award. Similarly, the Commission was obligated to order reimbursement if the evidence established that the benefits were wrongfully obtained. No particular filing was required to preserve this particular aspect of the Commission's authority, and it is properly before this Court as one of the aspects of the case that is subject to review by the Circuit Court.

The Employee insists that the Commission's Order was not reviewable because it did not grant or deny a benefit, as contemplated under the Workers' Compensation Act. She characterizes as "simplistic" appellant's position that "the word 'benefit' merely serves 'as a mechanism to distinguish a final decision from the various interim decisions' ...." Appellee elaborates:

> In fact, the decision of the Commission that formed the basis of this appeal was not based at all on either party seeking benefits. The Claimant was not seeking specific

---

9. The County points out that "the Commission website contains no specific form for seeking reimbursement under Lab. & Empl. § 9–310.1."

benefits and the County was not denying specific benefits or seeking back specific benefits. The sole issue raised by the County was the request that the Commission refer the matter to another state agency.[ ]

In a footnote, appellee points out that, even if the issue raised by the County concerned L.E. § 9–310.1, "no evidence was introduced at the hearing as to what benefits were 'knowingly obtained' [to] which the claimant was not entitled. As such, another hearing would have been necessitated to determine those benefits subject to reimbursement. This would leave the first hearing having not granted or denied a benefit from which the claimant could have appealed."

We reject the County's argument that an action under L.E. § 9–310.2 (referral to the Division) is tantamount to an action under L.E. § 9–310.1 (reimbursement). Nor would an action under L.E. § 9–310.2 necessarily determine the question of entitlement to reimbursement, so as to constitute the grant or denial of a benefit. Nevertheless, we agree that the Commission's decision was a final, appealable order, from which the County had the right to seek judicial review. We explain.

In analyzing appellant's attempt to characterize its claim under L.E. § 9–310.2 as an action under L.E. § 9–310.1, we consider the well settled principles of statutory interpretation. "The overarching rule is that, in construing statutes, our primary goal is always to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision . . ." *Opert v. Criminal Injuries Compensation Bd.*, 403 Md. 587, 593, 943 A.2d 1229 (2008) (quoting *Barbre v. Pope*, 402 Md. 157, 172, 935 A.2d 699 (2007))(citing *Dep't of Health v. Kelly*, 397 Md. 399, 419–20, 918 A.2d 470 (2007), and *Gen. Motors Corp. v. Seay*, 388 Md. 341, 352, 879 A.2d 1049 (2005)) (internal quotations omitted).

In our effort to effectuate the Legislature's intent, we give the words of a statute their ordinary and usual meaning. *City of Baltimore Dev. Corp. v. Carmel Realty Assocs.*, 395 Md. 299, 318, 910 A.2d 406 (2006); *Ridge Heating, Air Conditioning and Plumbing, Inc. v. Brennen*, 366 Md.

336, 350, 783 A.2d 691 (2001). If the language is clear and unambiguous, we ordinarily "need not look beyond the statute's provisions and our analysis ends." *Barbre*, 402 Md. at 173, 935 A.2d 699; *see also Thomas v. State Ret. & Pension Sys.*, 184 Md.App. 240, 249, 964 A.2d 733 (2009). In addition, "an interpretation should be given to the statutory provisions that does not lead to absurd consequences." *Anderson v. The Gables*, 404 Md. 560, 571–72, 948 A.2d 11 (2008); *see Chesapeake Charter, Inc. v. Anne Arundel Co. Bd. of Educ.*, 358 Md. 129, 135, 747 A.2d 625 (2000)(stating that an appellate court may also consider " 'the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense.' ") (citation omitted).

 Further, we are obligated to construe the statute as a whole, so that all provisions are considered together and, to the extent possible, reconciled and harmonized. *Navarro–Monzo v. Washington Adventist*, 380 Md. 195, 204, 844 A.2d 406 (2004); *see also Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 462, 869 A.2d 822 (2005) (" '[W]e do not read particular language in a statute in isolation or out of context [but construe it] in light of the Legislature's general purpose and in the context of the statute as a whole.' ") (citation omitted); *Gordon Family P'ship v. Gar on Jer*, 348 Md. 129, 138, 702 A.2d 753 (1997) (Where "appropriate," we interpret a provision "in the context of the entire statutory scheme of which it is a part."). If " 'reasonably possible' " we read a statute " 'so that no word, phrase, clause or sentence is rendered surplusage or meaningless,' " *Del Marr v. Montgomery Co.*, 169 Md.App. 187, 207, 900 A.2d 243 (2006) (citations omitted), *aff'd*, 397 Md. 308, 916 A.2d 1002 (2007), or "superfluous or redundant." *Blondell v. Baltimore City Police Dep't.*, 341 Md. 680, 691, 672 A.2d 639 (1996); *see Collins v. State*, 383 Md. 684, 691, 861 A.2d 727 (2004); *Eng'g Mgmt. Servs., Inc. v. Md. State Highway Admin.*, 375 Md. 211, 224, 825 A.2d 966 (2003); *Mayor & Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 551, 814 A.2d 469 (2002).

With these principles in mind, we look to the statutory text of L.E. § 9–310 and its plain meaning. To be sure, L.E. § 9–310.1 and L.E. § 9–310.2 are interrelated. Yet, the provisions are not synonymous. A request under L.E. § 9–310.2 for a referral to the Division is clearly not the same as a request for reimbursement of benefits wrongfully obtained by the employee, as set forth in L.E. § 9–310.1. If the County's position were correct, there would have been no reason for the Legislature to enact two distinct statutory provisions; one of the provisions necessarily would be rendered superfluous, which is at odds with the principles of statutory construction.[10]

Our construction of these two provisions is strengthened by the observation that the text of L.E. § 9–310.2 is broader than the text of L.E. § 9–310.1. Under L.E. § 9–310.2, the Commission is required to refer the matter to the Division, even if the claimant never actually obtained any benefits by fraud, so long as the evidence establishes a knowing *attempt* to do so. In contrast, under L.E. § 9–310.1 the employer would be entitled to recover the disputed benefits paid to the claimant only upon a finding that benefits were *actually but wrongfully obtained.* In other words, L.E. § 9–310.1 does not include conduct that amounts to attempt.

Therefore, we are not persuaded by appellant's back door attempt to cast this matter as an action to recover benefits paid to appellee. Appellant's claim under L.E. § 9–310.2 was not an action to recover benefits under L.E. § 9–310.1, merely because appellant could have sought to recover benefits if it had prevailed under L.E. § 9–310.2. Moreover, appellant is mistaken in its contention that if it had prevailed under L.E. § 9–310.2, it automatically would have been entitled to prevail under L.E. § 9–310.1, because the scope of § 9–310.2 is broader than § 9–310.1. This is not the end of our analysis, however.

---

10. We pause to observe that appellant utilized the Commission's form for a request for referral to the Fraud Division, under L.E. § 9–310.2. According to appellant, there was no form for reimbursement under L.E. § 9–310.1. We are not aware of any rule requiring an employer·to use a form provided by the Commission in order to bring a claim under L.E. § 9–310.1.

█ As noted, the right to judicial review of a decision by the Commission is governed by L.E. § 9–737. Under L.E. § 9–737, an employer "aggrieved by a decision of the Commission" may appeal to the circuit court, "provided the appeal is filed within 30 days after the mailing of the Commission's order." The cases that discuss L.E. § 9–737 and its predecessor, Article 101, § 56, indicate that a "decision" must be a "final decision or order in a case," rather than an interim order. *See Montgomery Co. v. Ward*, 331 Md. 521, 526, 629 A.2d 619 (1993).

In *Great American Ins. v. Havenner*, 33 Md.App. 326, 364 A.2d 95 (1976), decided prior to the enactment of L.E. § 9–310.1 and L.E. § 9–310.2, this Court set forth a definition of a " 'final order' or 'final action,' within the ambit of the Workmen's Compensation Law ...." *Id.* at 332, 364 A.2d 95. It stated that a final order "means an order or award made by the Commission in the matter then before it, determining the issues of law and of fact necessary for a resolution of the problem presented in that particular proceeding *and* which grants or denies some benefit under the [Workers' Compensation] Act." *Id.* (emphasis in original). Notably, it can include an interim order, under certain circumstances.

In *Havenner*, the Commission found that the employee's back injury was sustained in the course of his employment, and awarded him temporary total disability benefits. *Id.* at 327, 364 A.2d 95. The employer-insurer noted an appeal, alleging that the Commission had "... not justly considered all of the facts ... and ... [had] misconstrued the law and facts ...." *Id.* at 328, 364 A.2d 95. The employee claimed that the circuit court lacked jurisdiction over the subject matter because the Commission's order "was interlocutory 'and not a final order.' " *Id.* (quoting the employee). The circuit court agreed with the employer-insurer.

On appeal, we considered whether "an award of [TTD is] a 'final' order" for purposes of the right to judicial review. *Id.* at 327, 364 A.2d 95. We held that the award of TTD was a final, appealable order, because the decision determined all the

issues then before the Commission, and it conferred a benefit on the claimant. *Id.* at 332, 364 A.2d 95. The Court's analysis, *id.* at 328–29, 331, 364 A.2d 95, provides guidance:

Unquestionably, Md. Ann.Code art. 101, § 56 [predecessor to L.E. § 9–737] confers the right upon a "... person feeling aggrieved by any decision of the Commission to appeal to the circuit court `of the county [ ] ... having jurisdiction over the place where the accident occurred or over the person appealing from such decision ...." The Court of Appeals, however, has, by rule, made it perspicuous that only "final action" of the Commission is appealable. Md. Rule B1 a [predecessor to Rule 7–201].

The obvious question then is what is meant by "final action" or "final order," as that term is applied to appeals to the circuit court from decisions of the Workmen's Compensation Commission.

In *Liggett & Meyers Tobacco Company v. Goslin,* 163 Md. 74, 160 A. 804 (1932), the Court, referring to Md. Ann.Code art. 101, § 56 a said:

"... [T]he appeal allowed by the statute ... is not from the findings or opinion of the commission but from its 'decision.' And by 'decision' is obviously meant the order by which it disposes of the case." 163 Md. at 78, 160 A. at 806.

This Court, in *Flying "A" Service Station v. Jordan,* [17 Md.App. 477, 302 A.2d 650 (1973) ], stated:

*"A decision of the Commission which an aggrieved party is entitled to have reviewed by a Court must be an operative order which has the effect of granting or denying some benefit under the Workmen's Compensation law.* Most often, such a decision is reached by giving effect to multiple findings, but it is the ultimate decision or order, not each individual finding, which is the basis for judicial review. Obviously, in a review of the correctness of a decision or order, each finding that contributed to the final result is examined, and one incorrect finding may make the result incorrect. But the appeal is from the

result, rather than from each of its separate elements."
(Emphasis supplied). 17 Md.App. at 480–81, 302 A.2d at
653.

*Big Vein Coal Co. [v. Leasure,* 192 Md. 435, 64 A.2d 563
(1949) ] was concerned with the appeal from an order of the
Commission granting leave to file an amended claim. The
Court of Appeals held that such an order was interlocutory
and went on to restate the law that:

> "The judgment must be final before this Court has any
> jurisdiction to hear the appeal. Statutory provisions for
> appeal from, or review of, orders of administrative tribu-
> nals have generally been construed as applicable, not to
> interlocutory orders, but only to final orders." 192 Md. at
> 437, 64 A.2d at 564.

There can be no serious question but that the Commission
in the *Big Vein* case did not pass an operative order which
had the effect of granting or denying some benefit under
the Workmen's Compensation Act to either Big Vein or the
claimant, Leasure. The granting of the privilege to file an
amended claim did not adjudicate any issue of law or fact.
At most, it merely set the stage for an orderly presentation
of the evidence to the Commission of the entire claim and
not a fragmented part thereof.

* * *

Although the remedy of permanent disability is yet to be
determined, temporary total or temporary partial disability
awards are independent rights arising from the common
remedy of workmen's compensation which continue until the
claimant reaches maximum improvement . . . .

The Court was undoubtedly mindful of the economic impact
of a decision that would have held to the contrary. It said, *id.*
at 331–32, 364 A.2d 95:

> Under Maryland law, payments of compensation made
> pursuant to an award of the commission, even though
> reversed on appeal, may not be recovered from the claim-
> ant, *St. Paul Fire and Marine Ins. Co. v. Treadwell,* 263
> Md. 430, 283 A.2d 601 (1971). To hold that an award of

temporary disability (total or partial) may not be appealed would subject an employer-insurer to the hazard of paying an award which might amount to a large sum of money and render the employer-insurer unable to recover the expenditure if the courts determine the award was erroneous . . . .

In our view, the cases since *Havenner* that refer to the grant or denial of "benefits," in the context of appealability, are not controlling here, because of the particular statutory provision at issue in this case, enacted a few years ago. As we shall see, the cases discussed below recognized that workers' compensation cases generally concern the grant or denial of benefits, and demonstrate that if a decision is not essential to the disposition, it is not appealable. Conversely, a final, substantive decision of the Commission is appealable, as is an interim decision, if it pertains to an award or denial of a benefit.

In *Murray Int'l. Freight Corp. v. Graham,* 315 Md. 543, 555 A.2d 502 (1989), Graham hauled freight for Murray International Freight Corporation ("Murray"). Although the Commission determined that Graham was an employee of Murray, it determined that he did not sustain an accidental injury in the course of his employment, and denied his compensation claim. *Id.* at 546, 555 A.2d 502. Graham did not appeal. Instead, he filed suit against Murray to recover workers' compensation premiums that the company deducted from his pay. *Id.* The District Court entered judgment for Graham and the trucking company appealed, alleging that Graham was an independent contractor and not an employee. The circuit court affirmed.

On appeal, the Court of Appeals considered whether Murray was collaterally estopped from relitigating the Commission's determination of Graham's employment status, *i.e.,* whether he was an independent contractor or an employee of Murray. *Id.* at 545, 555 A.2d 502. The Court held that collateral estoppel did not bar Murray's claim, because "the fact-finding sought to be relitigated was not essential to the Commission's decision," and Murray could not have appealed

from the Commission's order denying Graham's request for workers' compensation benefits. *Id.* at 552, 555 A.2d 502.

The *Murray* Court quoted *Havenner,* 33 Md.App. at 332, 364 A.2d 95, for the proposition that, for "purposes of appealability," a final order is " 'an order or award made by the Commission in the matter then before it, determining the issues of law and of fact necessary for a resolution of the problem presented in that particular proceeding and which grants or denies some benefit under the Act.' " *Id.* at 553, 555 A.2d 502 (emphasis omitted). It explained that "[a] 'benefit' . . . means a grant of an award under Article 101 [predecessor to L.E. Title 9], or something equivalent thereto . . . ." *Id.* at 553 n. 6, 555 A.2d 502. The Court held that a "determination of the employment issue was not necessary to a 'resolution of the problem presented' by Graham's compensation claim." *Id.* Thus, it was not a final order as to that issue, and the employer could not appeal from the Commission's finding that Graham was Murray's employee.

*Paolino v. McCormick & Co.,* 314 Md. 575, 579, 552 A.2d 868 (1989), also provides guidance. Paolino, an employee of McCormick & Company ("McCormick"), injured her back and petitioned the Commission for benefits. The Commission awarded her permanent partial disability payments. *Id.* at 577, 552 A.2d 868. Thereafter, Paolino had a spinal fusion and sought temporary total disability for the period of her hospitalization. *Id.* at 578, 552 A.2d 868. McCormick opposed the claim, stating that Paolino no longer worked for McCormick and that her claim was time barred. The Commission denied the claimant's request, despite its determination that limitations did not bar her claim. *Id.* Paolino sought judicial review in the circuit court, and McCormick cross-appealed as to limitations. The circuit court granted partial summary judgment for Paolino on limitations, but later rejected her appeal of TTD, and entered a judgment for McCormick. Nevertheless, McCormick appealed the limitations issue to this Court, which found in its favor. *Id.*

The Court of Appeals remanded with instructions for this Court to dismiss the appeal. It quoted *Havenner* for the proposition that an appealable, final order of the Commission must grant or deny a benefit under the Workers' Compensation law. *Id.* at 583, 552 A.2d 868. In its view, the Commission's ruling as to limitations did not confer a "benefit," and therefore that finding was not appealable. The Court concluded that the limitations issue "was an interlocutory determination that disposed of nothing in a final sense; it merely kept alive Paolino's temporary total disability claim." *Id.* at 584, 552 A.2d 868.

More recently, in *Griggs v. C & H Mech. Corp.*, 169 Md.App. 556, 905 A.2d 402 (2006), C & H Mechanical Corporation ("C & H") and its insurer sought judicial review of the Commission's decision to deny its motion for a rehearing as to an order awarding benefits to an employee, Griggs. The employee filed a motion to dismiss. *Id.* at 562, 905 A.2d 402. After the circuit court denied the motion, Griggs appealed. *Id.* He argued that the "petition for judicial review should have been dismissed because (1) it challenge[d] only the Commission's ... denial of appellees' motion for a rehearing, rather than the ... order awarding workers' compensation; (2) the [denial of the motion for rehearing] [was] not a final appealable order because it [did] not grant or deny some benefit under the workers' compensation laws; and (3) it [was] too late to petition for review of the ... decision [granting him workers' compensation benefits]." *Id.* at 563, 905 A.2d 402.

This Court rejected Griggs's argument. *Id.* We were of the view that a challenge to the Commission's denial of the motion for rehearing was also a challenge to the award of benefits to Griggs. *Id.* at 564, 905 A.2d 402. The Court held that an employer is entitled to judicial review of the circuit court's denial of its request for a rehearing concerning an order of benefits to the employee. *Id.* We reasoned that "both the statutes and case law make clear that the 'decision' being challenged on appeal is the final substantive disposition of the workers' compensation claim." *Id.*

The cases discussed above must be reconciled with L.E. § 9–737, titled "Judicial Review," and considered in the context of the issues involved in those cases. L.E. § 9–737 expressly permits an employer "aggrieved by a decision of the Commission" to appeal, without any limitation restricting the right of appeal to cases granting or denying "benefits." As we have said, to the extent that the Commission makes a decision not essential to the ultimate disposition, such as in *Paolino* and *Murray,* such decisions are not final and appealable. In contrast, the award or denial of compensation benefits, even on a temporary basis, is appealable. But, these cases do not necessarily foreclose an appeal under the circumstances attendant here, concerning a statute enacted long after the decisions were rendered in *Havenner,* 33 Md.App. 326, 364 A.2d 95, *Murray,* 315 Md. 543, 555 A.2d 502, and *Paolino,* 314 Md. 575, 552 A.2d 868. By its terms, the Legislature conferred a statutory right on the Commission to refer fraud cases to the Division, pursuant to L.E. § 9–310.2. The Commission's denial of the employer's request for a referral to the Division fully and finally resolved the question of whether the employer showed, by a preponderance of evidence, that Willis "knowingly affected or knowingly attempted to affect the payment of compensation, fees, or expenses . . . by means of a fraudulent representation . . . ." Moreover, L.E. § 9–737 is not ambiguous, and thus we need not look beyond the statute to glean the legislative intent. *Bd. of License Comm'rs for Charles Co. v. Toye,* 354 Md. 116, 122, 729 A.2d 407 (1999); *see Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 513, 525 A.2d 628 (1987) (stating that when a statute is not ambiguous, we generally will not look beyond its language). The plain language of L.E. § 9–737 allows an aggrieved employer to note a timely appeal.

Notably, when the Legislature enacted L.E. § 9–310.1 and L.E. § 9–310.2, it did not signal an intent to preclude judicial review of decisions rendered by the Commission under those provisions. *Cf. Maryland–Nat'l Capital Park and Planning Comm'n v. Anderson,* 395 Md. 172, 188, 189, 909 A.2d 694 (2006) (concluding that a not guilty finding under the Law

Enforcement Officer's Bill of Rights is not appealable by the agency because § 3–108(a)(3) of the Public Safety Article "expressly states that '[a] finding of not guilty terminates the action,'" and noting: "If the Legislature intended for 'not guilty' findings to be reviewable, it could have included language to express that intention, rather than stating that the action is terminated."). Indeed, the denial of the right to judicial review would come close to vesting unchecked power in the Commission with respect to matters under L.E. § 9–310.2, and could potentially thwart the underlying legislative purpose of that provision.

We are mindful that "the Workers' Compensation Act is to be construed as liberally in favor of injured employees as the Act's provisions will permit so as to effectuate its benevolent purpose as remedial social legislation." *Lovellette v. Mayor and City Council of Baltimore*, 297 Md. 271, 282, 465 A.2d 1141 (1983). *See also Uninsured Employers' Fund v. Danner*, 388 Md. 649, 659, 882 A.2d 271 (2005) ("Because this case involves the Workers' Compensation Act, we . . . endeavor to interpret its provisions liberally, where possible, in order to effectuate the broad remedial purpose of the statutory scheme."); *Livering v. Richardson's Rest. & PMA*, 374 Md. 566, 574, 823 A.2d 687 (2003) ("The Act essentially is remedial, social legislation designed to protect workers and their families from various hardships that result from employment-related injuries."); *Mayor and City Council of Baltimore City v. Johnson*, 156 Md.App. 569, 594, 847 A.2d 1190 (2004) ("As we consider the statutory scheme and the specific provisions that are at issue here, we are mindful of the broad social and remedial purposes that undergird the Act."), *aff'd*, 387 Md. 1, 874 A.2d 439 (2005).

Yet, the Legislature enacted L.E. § 9–310.1 and L.E. § 9–310.2 to discourage fraud, and to deter employees from abusing the privileges afforded under the Workers' Compensation Act. These sections were intended to protect employers/insurers and the public by helping to assure the integrity of the workers' compensation system. As we have said, that purpose

would be thwarted without judicial review of the Commission's decision, whether the decision happened to grant or deny a referral request based on alleged fraud. An interpretation of L.E. § 9–737, to permit judicial review of decisions under L.E. § 9–310.2, does not run counter to the benevolent purpose of the Act.

For these reasons, we shall reverse the decision of the circuit court and remand for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**