552 A.2d 868

Jennie M. PAOLINO

v.

McCORMICK & COMPANY et al.

No. 40, Sept. Term, 1988.

Court of Appeals of Maryland.

Feb. 3, 1989.

Jeff Horowitz (Schlachman, Potler, Belsky & Weiner, P.A., Baltimore) on brief, for petitioner.

Raymond A. Hein and Herbert Burgunder, Jr. (Horn, Bennett & Redmond, P.A., Baltimore) on brief, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

ADKINS, Judge.

Maryland Code, Article 101 § 40(c) prohibits the Workmen's Compensation Commission (Commission) from making any "modification or change of any award of compensation ... unless application therefor shall be made to the Commission within five years next following *the last payment of compensation.*" [Emphasis supplied.] We issued a writ of certiorari in this case to decide whether an employer which continues to pay wages to a disabled employee who has sustained an accidental injury arising out of and in the course of her employment is making payments of "compensation" for purposes of that statutory provision. Unfortunately, we find ourselves unable to reach that question. We explain.

I.

In 1978, petitioner Jennie M. Paolino (Paolino) was working for respondent McCormick & Company (McCormick). Twice that year, in May and August, she injured her back. She claimed workers' compensation, and the two cases were consolidated. On 22 August 1978, the Commission found a 25 percent loss of the industrial use of Paolino's body as a result of the injuries to her back. It awarded her permanent partial disability payments of $63 per week for 125 weeks. The final payment of that compensation was made on or about 1 December 1978.

■ Thereafter, the Commission entered an order as to payment of subsequent medical expenses and with respect to vocational rehabilitation, but it made no further awards of monetary compensation.[1] Paolino remained in McCormick's employ for some time, although she was unable to work every day. When she did work she was given relatively light duty. McCormick continued to pay Paolino her regular wages, apparently pursuant to a company policy

---

1. Medical benefits are not payment of compensation within the meaning of Article 101, § 40(c). *Holy Cross Hospital of Silver Spring, Inc. v. Nichols,* 290 Md. 149, 428 A.2d 447 (1981).

under which it continued the pay of an employee who, for any reason, was unable to work.

By February 1985, however, Paolino seems to have left McCormick's employ. In that month she had a spinal fusion, an operation required, according to her, by the worsening of her back problem. She sought temporary total disability for that period of hospitalization. McCormick resisted this claim on the ground that Paolino was no longer in the work force (*i.e.*, she had altogether retired) and so was not entitled to workers' compensation. It also argued that since the last compensation payment to Paolino had been in December 1978, her 1985 attempt to reopen her case was barred by the passage of the five years prescribed by § 40(c).

The temporary total disability claim came on for hearing before the Commission on 26 September 1985. It found that limitations was no bar to Paolino's claim but, nevertheless, rejected it. It also held open, subject to further consideration, any further claim as to permanent partial disability. From the denial of the temporary total disability award, Paolino appealed to the Circuit Court for Baltimore City. McCormick purported to cross appeal from the ruling on limitations. The circuit court granted partial summary judgment for Paolino on the limitations question. At a later date, it rejected her appeal of the denial of temporary total and affirmed the Commission's determination on that point. The court entered judgment for McCormick, whereupon McCormick purported to appeal the limitations issue to the Court of Special Appeals.

That court agreed with McCormick. In an unreported opinion it held that McCormick's voluntary payment of full salary to Paolino was not compensation as defined in Article 101, § 67(5), and, therefore, was not "compensation" for purposes of § 40(c). The intermediate appellate court concluded that Paolino's claim for temporary total disability was barred, the last payment of true "compensation" having occurred more than five years prior to her 1985 attempt to reopen the case. *McCormick & Company v. Paolino,*

No. 833, September Term, 1987 (filed 18 February 1988). We granted Paolino's petition for certiorari to review that decision, but, as we have stated, we find ourselves unable to do so. The problem is that McCormick lacked the ability to appeal the circuit court decision to the Court of Special Appeals.

## II.

 Our cases apply a number of rules on the subject of when an appeal is impermissible, on the one hand, and when on the other, an appeal is required in order to raise certain issues. For example, an appeal or cross appeal is impermissible from a judgment wholly in a party's favor. *Offutt v. Montgomery Cty. Bd. of Ed.*, 285 Md. 557, 564 n. 4, 404 A.2d 281, 285 n. 4 (1979). In that situation, however, despite a party's inability to raise adverse issues by appeal or cross appeal, if the losing party appeals, the winning party may argue as a ground for affirmance matters resolved against it at trial. As Judge Eldridge explained, for the Court, in *Offutt:*

> [w]here a party has an issue resolved adversely in the trial court, but ... receives a wholly favorable judgment on another ground, that party may, as an appellee, argue as a ground for affirmance the matter that was resolved against it at trial.... This is merely an aspect of the principle that an appellate court may affirm a trial court's decision on any ground adequately shown by the record.

*Id.* [citations omitted]. But one who seeks to attack, modify, reverse, or amend a judgment (as opposed to seeking to affirm it on a ground different from that relied on by the trial court) is required to appeal or cross appeal from that judgment. *See, e.g., Taylor v. Wahby,* 271 Md. 101, 110, 314 A.2d 100, 104 (1974); *Walston v. Sun Cab Co.,* 267 Md. 559, 563–564, 298 A.2d 391, 394 (1973); *Temple Hill Baptist Church v. Dodson,* 259 Md. 515, 521, 270 A.2d 802, 806 (1970); *Glen Alden Corp. v. Duvall,* 240 Md. 405, 421, 215 A.2d 155, 167 (1965).

These principles are illustrated by two recent appellate decisions. In the first, *Joseph H. Munson Co. v. Sec. of State*, 294 Md. 160, 448 A.2d 935 (1982), *aff'd*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), Munson sought, among other things, a declaration that a statute was unconstitutional. The Secretary of State argued that the statute was constitutional, but also questioned Munson's standing to raise the constitutional question. The trial court declared the statute to be constitutional, in effect upholding Munson's standing. Munson appealed; the Secretary of State did not cross appeal. The Court of Special Appeals affirmed.

Before this Court, the Secretary of State attempted to reassert his challenge to Munson's standing. Munson argued that because of the Secretary's failure to cross appeal, the issue was not properly before the Court. Judge Eldridge, for the Court, reasoned that

> [u]nder circumstances where absence of standing would present an alternative ground for upholding a trial court's judgment, an appellee is entitled to argue that ground in an appellate court.... In such situation, a cross-appeal would be unnecessary and, in fact, would be improper.... Moreover, in that situation, even if lack of standing were not raised by the appellee, an appellate court noticing the issue would normally consider it sua sponte under the principle that a judgment will ordinarily be affirmed on any ground adequately shown by the record, whether or not relied on by the trial court or raised by a party....

294 Md. at 167–168, 448 A.2d at 939 [citations omitted]. "Thus," Judge Eldridge continued,

> in the case at bar, if the trial court had dismissed the action on some ground other than lack of standing, the Secretary as appellee would be entitled to argue Munson's alleged lack of standing as an alternate basis for affirmance. However, the trial court did not dismiss the action. Instead, it rendered a declaratory judgment on the merits. Munson's alleged lack of standing would not furnish an alternative ground for affirming the judgment.

On the contrary, the Secretary's argument amounts to an attack upon the judgment. If the issue is properly before us, and if we agreed that Munson had no standing, we would be obliged to order that the trial court's judgment be reversed and that the case be remanded with directions to dismiss the action.

*Id.* at 168, 448 A.2d at 939. He concluded:

Consequently, the Secretary is attempting to challenge the trial court's judgment in this case without having taken an appeal. A party to a trial court proceeding, however, is not entitled to seek direct appellate review and reversal of the trial court's judgment unless he has filed a valid, timely order of appeal. . . . The Secretary, not having filed an order of appeal, may not on appeal attack the trial court's declaratory judgment.

*Id.* at 168, 448 A.2d at 939–940 [citations omitted].

The second case, *Md.-Nat'l. Cap. P. & P. v. Friendship Hts,* 57 Md.App. 69, 468 A.2d 1353, *cert. denied,* 300 Md. 89, 475 A.2d 1200 (1984), illustrates the other side of the coin. There, Friendship Heights and The Hills (Friendship Heights), a special taxing district, appealed from the approval of a site plan by the Maryland–National Capital Park and Planning Commission (M–NCPPC). The Circuit Court for Montgomery County dismissed the appeal, holding that the circuit court lacked jurisdiction because site plan review was not a "contested case" as defined in the Administrative Procedure Act. Both sides appealed to the Court of Special Appeals. The Court of Special Appeals held that M–NCPPC did have standing to appeal. Although the trial court's judgment would ordinarily be viewed as being in M–NCPPC's favor, the intermediate appellate court found determinative the fact that dismissal for lack of subject matter jurisdiction was actually detrimental to M–NCPPC. The circuit court's determination was adverse because it opened the site plan review procedure to attack via mandamus, declaratory judgment, or injunction actions, over a period far beyond the 30 days available for appeal from a

contested case under the Administrative Procedure Act. Md. Rule B4; *Clinton Com. Hos. v. Md. Comp. Health,* 31 Md.App. 265, 269, 355 A.2d 775, 778 (1976).

## III.

With these principles in mind we approach the case before us, turning first to the Commission's order of 26 September 1985.[2] It will be recalled that this order (1) declined to apply the bar of § 40(c) to Paolino's claim for temporary total disability, (2) denied that claim, and (3) purported to hold open the question of permanent partial disability.

 This order was, in fact, wholly favorable to McCormick. Its statement as to limitations was no more than a step in reasoning that allowed the Commission to reach the second issue. The appeal allowed by Article 101, § 56(a) from "any decision of the Commission"

> is not from the findings or opinion of the commission but from its 'decision.' And by 'decision' is obviously meant the order by which it disposes of the case.

*Liggett & Myers Tobacco Co. v. Goslin,* 163 Md. 74, 78, 160 A. 804, 806 (1932). *See Doehring v. Wagner,* 311 Md. 272, 274, 533 A.2d 1300, 1301 (1987) ("[a]ppeals are taken from judgments and not opinions"). The appeal statute applies "not to interlocutory orders, but only to final orders." *Big Vein Coal Co. v. Leasure,* 192 Md. 435, 437, 64 A.2d 563, 564 (1949).[3] Moreover, the order's statement about holding

---

**2.** Paolino's motion for a rehearing was denied on 16 October 1985, after which the appeal and cross appeal were noted.

**3.** This is not to say that one who appeals from an adverse final judgment may not bring up for review adverse interlocutory orders. In the context of appeals to this Court and to the Court of Special Appeals, Md.Rule 8–131(d) ordinarily permits just that. But we have here, with respect to McCormick, an attempt to appeal from a favorable judgment. Since, as we have pointed out, such an appeal is not permitted, it cannot be made a vehicle to review adverse interlocutory rulings.

open the permanent partial disability question was at best a gratuitous reference to the Commission's possible continuing jurisdiction. *See* R. Gilbert and R. Humphreys, *Maryland Workers' Compensation Handbook,* § 17.5 (1988) and cases therein cited.

■ The Commission's 26 September 1985 decision, the one by which it disposed of the case then before it, was the decision denying temporary total disability. That determination and only that determination was the Commission's final action for purposes of appeal. As Chief Judge Gilbert has put it for the Court of Special Appeals: " '[F]inal order' or 'final action,' within the ambit of the Workmen's Compensation Law, means an order or award made by the Commission in the matter then before it, determining the issues of law and of fact necessary for a resolution of the problem presented in that particular proceeding *and* which grants or denies some benefit under the Act." *Great American Ins. v. Havenner,* 33 Md.App. 326, 332, 364 A.2d 95, 99 (1976) [emphasis in original]. *See also Flying "A" Service Station v. Jordan,* 17 Md.App. 477, 302 A.2d 650 (1973).

The only part of the 26 September 1985 order granting or denying any benefit under Article 101 was the portion denying temporary total disability. For appeal purposes, that was the Commission's decision. As we have stated, it was wholly favorable to McCormick and thus a decision from which McCormick could neither appeal nor cross appeal, as part II of this opinion demonstrates.

■ Having said that, however, we note that on Paolino's appeal to the circuit court, it is possible that McCormick could have argued the alleged error of the Commission's ruling on the limitations issue as a basis for affirmance of the Commission's denial of temporary total disability. That argument would in no way seek to attack or modify the temporary total ruling, but only to affirm it. The argument

would appear to be permissible under *Offutt* and other cases of like tenor. Accordingly, we may assume, for purposes of argument, that the limitations issue was properly before the circuit court; in so doing, we simply view McCormick's cross appeal as surplusage. To take this view, however, does not help McCormick at all, since the circuit court judgment was also wholly in McCormick's favor. Consequently, McCormick lacked standing to appeal that judgment to the Court of Special Appeals.

We recall that in the circuit court the limitations issue was decided in Paolino's favor by a partial summary judgment. That was an interlocutory determination that disposed of nothing in a final sense; it merely kept alive Paolino's temporary total disability claim. Ultimately, the circuit court affirmed the Commission's judgment on the disability claim and, according to the docket, entered judgment in favor of the defendant—McCormick. What the order affirmed, as the record makes clear, was the Commission's only appealable order: the denial of a temporary total disability award to Paolino. Had Paolino appealed the circuit court judgment to the Court of Special Appeals, McCormick, without cross appealing, could have been heard to argue that Paolino's claim was barred by limitations. *Offutt, supra,* 285 Md. at 564 n. 4, 404 A.2d at 285 n. 4. *See Munson, supra,* 294 Md. at 167–168, 448 A.2d at 939; *Robeson v. State,* 285 Md. 498, 502, 403 A.2d 1221, 1223 (1979). But Paolino did not appeal, and for the reasons we have stated, McCormick had no standing to do so. As a consequence, we must vacate the judgment of the Court of Special Appeals; it should have dismissed the appeal.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO DISMISS THE APPEAL. ALL COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY McCORMICK.