3 A.3d 448

**Valerie J. WILLIS**

v.

**MONTGOMERY COUNTY, Maryland.**

**No. 138, Sept. Term, 2009.**

Court of Appeals of Maryland.

Aug. 25, 2010.

524

Douglas M. Gross (Chirumbole, Gross & Conrad, P.C. of Gaithersburg, MD), on brief, for Petitioner.

Wendy B. Karpel, Associate Co. Atty. (Marc P. Hansen, Acting Co. Atty., and Karen L. Federman Henry, Div. Chief, of Rockville, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

HARRELL, J.

This case evolves from Valerie J. Willis's claim for workers' compensation benefits, under the Workers' Compensation Act, §§ 9–101—9–1201 of the Labor and Employment Article, Maryland Code (1999, 2008 Repl. Vol.),[1] for injuries ostensibly sustained on 20 July 2001 in the course of her employment as a police officer with the Montgomery County Police Department (the "County"). The County paid for some of her medical treatment, but learned later of a non-work-related event, not previously disclosed, that may have contributed to her need for treatment. The County filed with the Workers' Compensation Commission (the "Commission") a request for a hearing and to refer Willis's case to the Maryland Insurance Fraud Division (the "Division"). The Commission determined, after a hearing, that no fraud occurred and denied the County's request. The County sought judicial review in the Circuit Court for Montgomery County of the Commission's refusal to refer the matter to the Division. The court held that the Commission's order was not an appealable decision. We are tasked with deciding whether the Commission's refusal to refer a person to the Division under the Workers' Compensation Act is a final administrative decision subject to a petition for judicial review.

## I. FACTS

On 20 July 2001, Willis claimed to have injured her left knee while participating in a departmental training exercise designed to simulate a Columbine High School terrorist situa-

---

1. All statutory references herein are to the Labor and Employment Article, unless otherwise indicated.

tion. She did not miss any actual days from work because of that injury because she used three previously-scheduled days off from work to recuperate before returning to duty. She did not seek immediate medical treatment for this injury. She did not report the injury in accordance with formal departmental procedures, although she advised orally her supervisor, Lieutenant Rodney Hill, of the episode. He suggested to her that she file a workers' compensation claim. Willis did not act on this advice immediately. In August 2001, Willis assertedly sustained a second injury to her left knee while participating in a shooting exercise with the Police Department. She did not seek medical treatment, miss any time from work, or immediately report this event to her employer either.

On 31 December 2001, Willis sustained an injury to her left knee, while off-duty, when she jumped from the back of a pick-up truck. She sought immediate medical attention. She told the first two doctors that she saw only of the December incident as the cause of her injury. She consulted thereafter with Dr. David L. Higgins, to whom she described the injuring events of July and December, but not the August episode. Dr. Higgins's record of his visit with Willis indicates that his impression was that she suffered from a torn anterior cruciate ligament, torn medial meniscus, and torn lateral meniscus in her left knee. Dr. Higgins performed surgery on 30 January 2002 to repair these injuries.

On 4 March 2002, Willis and her then attorney prepared paperwork for a claim to be filed with the Commission, asserting that she sustained injury to her left knee as a result of the training exercise on 20 July 2001. On 14 March 2002, Dr. Higgins sent a letter to Willis's attorney, expressing his "opinion with a reasonable degree of medical certainty that Ms. Valerie Willis tore her left knee anterior cruciate ligament while on duty as a police officer with a twisting injury in 7/01. She had continued symptoms since that initial injury." With this letter in hand, her attorney submitted the claim to the Commission. A corrected claim was filed on 21 April 2002 stating that Willis also injured her back, in addition to her knee, during the 20 July training exercise. In neither itera-

tion of her claim did Willis mention the August or December incidents or injuries. On 4 July 2002, the Commission determined that Willis sustained an accidental injury or occupational disease/illness, as defined in § 9–101,[2] arising out of and in the course of her employment on 20 July 2001. The Commission determined that her weekly wage was $557.

She underwent a second surgery in September 2005, for which the County, through the Montgomery County Self–Insured Fund, paid. In April 2006, Willis claimed temporary total disability benefits dating back to 2002. The County filed issues with the Commission, requesting a hearing for referral of Willis's case to the Maryland Insurance Fraud Division (the "Division"). The County filed this request on a form provided by the Commission on its website. The form states, in part, that "[t]he undersigned alleges that the person named below violated section 9–310.2(a) of the Labor & Employment Article and requests a hearing before the Commission."[3] Willis is listed as the "Person to be Referred" and the "Montgomery

---

**2.** The Act refers to an "accidental personal injury" and defines it as
(1) an accidental injury that arises out of and in the course of employment;
(2) an injury caused by a willful or negligent act of a third person directed against a covered employee in the course of the employment of the covered employee; or
(3) a disease or infection that naturally results from an accidental injury that arises out of and in the course of employment, including:
(i) an occupational disease; and
(ii) frostbite or sunstroke caused by a weather condition.
§ 9–101(b). The Act defines an "occupational disease" to mean a disease contracted by a covered employee:
(1) as the result of and in the course of employment; and
(2) that causes the covered employee to become temporarily or permanently, partially or totally incapacitated.
§ 9–101(g).

**3.** Section 9–310.2 provides, in relevant part:
(a) Referral of certain fraud cases to Insurance Fraud Division.—In any administrative action before the Commission, if it is established by a preponderance of the evidence that a person knowingly affected or knowingly attempted to affect the payment of compensation, fees, or expenses under this title by means of a fraudulent representation, the Commission shall refer the case on the person to the Insurance Fraud Division in the Maryland Insurance Administration.

County Self-Insured Fund," is listed as the "Party Requesting a Hearing." It appears that Joan Fitzwater, the senior adjuster for the Schaffer Companies (the company that apparently managed and administered the County's self-insured fund at the time), signed the form. Specifically, the County alleged that, in May 2002, Willis informed the County that she sustained a work-related injury on 20 July 2001 to her left knee and that the County paid her workers' compensation benefits for that injury. When she made a claim in 2006 for temporary total disability dating back to 2002, the County discovered, for the first time, the non-work-related injurious event that occurred on 31 December 2001. Claimant's attorney, in riposte, filed issues requesting attorney fees, costs and penalties, because the Employer/Insurer raised frivolous issues.

The Commission held a hearing on 17 April 2007. The Commission found that neither claimant nor her prior counsel committed fraud, and accordingly, declined to refer the case to the Division. From that decision, the County sought judicial review in the Circuit Court for Montgomery County. Willis filed a Motion for Summary Judgment or to Dismiss, arguing that the Commission's refusal to refer the case to the Fraud Division was not appealable because it was not a final administrative decision. The County opposed the Claimant's motion, arguing that the order was final because it denied the County the right to reimbursement under § 9–310.1.[4] The Circuit Court concluded that the Commission's order neither granted nor denied a benefit under the Workers' Compensation Act and, thus, was not a final order or decision. Therefore, the

---

4. Section 9–310.1 provides, in relevant part:
 (a) Reimbursement.—In any administrative action before the Commission, if it is established by a preponderance of the evidence that a person has knowingly obtained benefits under this title to which the person is not entitled, the Commission shall order the person to reimburse the insurer, self-insured employer, the Injured Workers' Insurance Fund, the Uninsured Employers' Fund, or the Subsequent Injury Fund for the amount of all benefits that the person knowingly obtained and to which the person is not entitled.

court granted Willis's motion for summary judgment and dismissed the County's petition for judicial review.

The County filed timely a notice of appeal to the Court of Special Appeals, which reversed the judgment of the Circuit Court in a reported opinion. *Montgomery County v. Willis,* 187 Md.App. 514, 979 A.2d 209 (2009). The intermediate appellate court agreed with the County that the Commission's decision was a final, appealable order, from which the County had the right to seek judicial review. *Id.* at 538, 979 A.2d at 223. In doing so, the intermediate appellate court rejected the County's argument justifying the appealability of the order on the basis that "[a] request under L.E. § 9–310.2 for referral to the Division is clearly not the same as a request for reimbursement of benefits wrongfully obtained by the employee, as set forth in L.E. § 9–310.1." *Id.* at 540, 979 A.2d at 224. Rather, the court held that the County, an aggrieved party, had the right to petition for judicial review of the refusal to refer a person to the Division because the denial "would come close to vesting unchecked power in the Commission with respect to matters under L.E. § 9–310.2. . . ." *Id.* at 548, 979 A.2d at 229. The Court conceived that its holding furthered the Legislature's intent in passing §§ 9–310.1 and 9–310.2, which was "to discourage fraud, and to deter employees from abusing the privileges afforded under the Workers' Compensation Act." *Id.* We issued a writ of certiorari, 411 Md. 599, 984 A.2d 244 (2009), upon Willis's petition, to consider the following question:

> When an employer raises an issue before the Workers' Compensation Commission seeking a request for referral to the Maryland Insurance Fraud Division pursuant to Md. Lab. & Employ. Code Ann. § 9–310.2 and that request for the referral is denied, is the denial an appealable issue[?] [5]

---

5. Petitioner has re-worded her question from the question she presented originally in her petition for certiorari which read:

> What constitutes an appealable issue in a workers' compensation claim in that: must the decision of the workers compensation commission grant or deny a benefit to be appealable?

For the reasons that we shall explain, we reverse the judgment of the Court of Special Appeals and hold that the Commission's failure to grant the County's request to refer Willis to the Division was not an appealable final administrative action.

## II. ANALYSIS

■■■■ We start with the "basic premise that, in order for an administrative agency's action properly to be before this Court (or any court) for judicial review, there generally must be a legislative grant of the right to seek judicial review." *Harvey v. Marshall,* 389 Md. 243, 273, 884 A.2d 1171, 1189 (2005). "The right to an appeal is not a right required by due process of law, nor is it an inherent or inalienable right. An appellate right is entirely statutory in origin and no person or agency may prosecute such an appeal unless the right is conferred by statute." *Criminal Injuries Compensation Bd. v. Gould,* 273 Md. 486, 500, 331 A.2d 55, 64 (1975) (citations omitted).[6]

In the context of appeals from an administrative decision of the Commission, § 9–737 confers the right to appeal upon a party or any other "interested person" that is "aggrieved by a decision of the Commission...." [7] In the present case, the

Although re-worded in her brief, no substantive change is worked in the focus of the original question presented for review. The question presented in her brief is merely a narrowing refinement of the broader question framed in her petition for a writ of certiorari.

**6.** Before the legal nomenclature changed to reflect more properly that what was known formerly as an "appeal" from an action of a State or local administrative body was a "petition for judicial review" action, the older cases almost uniformly referred to the action as an "appeal." The terms are effectively synonymous for present analytical purposes.

**7.** Section 9–737 provides:
An employer, covered employee, dependent of a covered employee, or any other interested person aggrieved by a decision of the Commission, including the Subsequent Injury Fund and the Uninsured Employers' Fund, may appeal from the decision of the Commission provided the appeal is filed within 30 days after the date of the mailing of the Commission's order by:

County sought judicial review in the Circuit Court of the Commission's refusal to refer the case under § 9–310.2.

Willis argues that the Commission's refusal to refer her to the Division was not an appealable decision because it did not grant or deny a benefit to the County, and thus the County is not "aggrieved" for the purposes of § 9–737. In response, the County contends that the Commission's decision denied it benefits because, by requesting the Commission to refer Willis to the Division, it also requested implicitly reimbursement of benefits that the County paid to her in the past, pursuant to § 9–310.1, if fraud were found, although it failed to state expressly this request in its papers filed with the Commission. The County concedes that it did not request explicitly this relief, but rejoins that it did not have to because, by requesting a hearing for a referral to the Division pursuant to § 9–310.2, it should be understood necessarily, if successful, also to seek reimbursement for benefits obtained wrongfully by Willis.[8] In other words, the County asserts that when it requested the Commission to refer the fraud claim under § 9–310.1, it did not need to inform the Commission also that it sought reimbursement. Rather, it need only request referral to the Division, despite the fact that § 9–310.2 does not itself provide for reimbursement of back benefits as a remedy.

 "As a general rule, an action for judicial review of an administrative order will lie only if the administrative order is final." *Holiday Spas v. Montgomery County Human Relations Comm'n,* 315 Md. 390, 395, 554 A.2d 1197, 1199 (1989).

---

(1) filing a petition for judicial review in accordance with Title 7 of the Maryland Rules;

(2) attaching to or including in the petition a certificate of service verifying that on the date of the filing a copy of the petition has been sent by first-class mail to the Commission and to each other party of record; and

(3) on the date of the filing, serving copies of the petition by first-class mail on the Commission and each other party of record.

**8.** We offer no comment and reach no conclusion in this case with regard to the County's contention that Willis obtained benefits wrongfully.

To be "final," the order or decision must dispose of the case by deciding all question of law and fact and leave nothing further for the administrative body to decide. *See, e.g., Montgomery County v. Ward,* 331 Md. 521, 528–29, 629 A.2d 619, 623 (1993); *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 553, 555 A.2d 502, 507 (1989); *Holiday Spas,* 315 Md. at 396, 554 A.2d at 1200; *Paolino v. McCormick & Co.,* 314 Md. 575, 582, 552 A.2d 868, 871 (1989); *Md. Comm'n on Human Relations v. Balt. Gas and Elec.,* 296 Md. 46, 57, 459 A.2d 205, 212 (1983); *Furley v. Warren–Ehret Co.,* 195 Md. 339, 345, 73 A.2d 497, 499 (1950); *Liggett & Meyers Tobacco Co. v. Goslin,* 163 Md. 74, 78, 160 A. 804, 806 (1932); *Griggs v. C & H Mech. Corp.,* 169 Md.App. 556, 564, 905 A.2d 402, 406 (2006); *Frederick County Bd. of Comm'rs v. Sautter,* 123 Md.App. 440, 445–6, 718 A.2d 685, 688 (1998); *Great Am. Ins. Co. v. Havenner,* 33 Md.App. 326, 332, 364 A.2d 95, 99 (1976); *Flying "A" Serv. Station v. Jordan,* 17 Md.App. 477, 481, 302 A.2d 650, 653 (1973). Furthermore, to constitute a final administrative action in the context of judicial review of a Workers' Compensation matter, the action must grant or deny a benefit. *See, e.g., Paolino,* 314 Md. at 583, 552 A.2d at 872 (1989); *Sautter,* 123 Md.App. at 446, 718 A.2d at 688; *Havenner,* 33 Md.App. at 332, 364 A.2d at 99; *Flying "A" Serv. Station,* 17 Md.App. at 480–81, 302 A.2d at 653.

The County requested expressly in the "issue" that it filed with the Commission, on the form made available by the Commission, that the Commission refer Willis to the Division pursuant to § 9–310.2 of the Labor and Employment Article. Section 9–310.2, entitled "Referral of certain fraud cases to Insurance Fraud Division; reports," provides, in relevant part:

(a) Referral of certain fraud cases to Insurance Fraud Division.—In any administrative action before the Commission, if it is established by a preponderance of the evidence that a person knowingly affected or knowingly attempted to affect the payment of compensation, fees, or expenses under this title by means of a fraudulent representation, the Commission shall refer the case on the person to the

Insurance Fraud Division in the Maryland Insurance Administration.

On the other hand, § 9–310.1 entitled "Benefits wrongfully obtained; reimbursement; interest," provides, in relevant part:

(a) Reimbursement.—In any administrative action before the Commission, if it is established by a preponderance of the evidence that a person has knowingly obtained benefits under this title to which the person is not entitled, the Commission shall order the person to reimburse the insurer, self-insured employer, the Injured Workers' Insurance Fund, the Uninsured Employers' Fund, or the Subsequent Injury Fund for the amount of all benefits that the person knowingly obtained and to which the person is not entitled.

The County argues that the Commission's decision denied a benefit to it because effectively it denied the County reimbursement for (or the opportunity to seek reimbursement for) benefits wrongfully obtained by Willis. For the purposes of a Workers' Compensation administrative order, a benefit means "a grant of an award under [the Workers' Compensation Act], or something equivalent thereto; that is, something awarded by the Commission." *Murray*, 315 Md. at 553 n. 6, 555 A.2d at 506 n. 6.

▮▮▮▮ Whether a request for a hearing for referral embraces also an implicit request for reimbursement under the Workers' Compensation Act is a question of statutory interpretation, and, as such, is purely a legal one. *See Harvey*, 389 Md. at 257, 884 A.2d at 1179. Accordingly, our review is nondeferential to the judgment of earlier reviewing courts. *Lockshin v. Semsker*, 412 Md. 257, 273, 987 A.2d 18, 27 (2010). The cardinal rule of statutory construction "is to ascertain and effectuate the real and actual intent of the Legislature." *Id.* at 274, 987 A.2d at 28. We turn first to the language of the statute, to which we ascribe the ordinary, plain meaning of the words. *Id.* at 275, 987 A.2d at 28. If the meaning of the language is clear and unambiguous, we presume the Legislature meant what it said. That typically ends our inquiry as to

legislative intent "and we apply the statute as written, without resort to other rules of construction." *Id.* at 275, 987 A.2d at 28–29.

 "We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with 'forced or subtle interpretations' that limit or extend its application." *Id.* at 275, 987 A.2d at 29 (quoting *Lonaconing Trap Club, Inc. v. Dep't of the Env't,* 410 Md. 326, 339, 978 A.2d 702, 709 (2009)). Nor do we construe the language of the statute in a vacuum; rather, we examine the language "within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Id.* at 276, 987 A.2d at 29. Furthermore, " '[w]e avoid a construction of the statute that is unreasonable, illogical, or inconsistent with common sense.' " *Lonaconing,* 410 Md. at 339, 978 A.2d at 709 (quoting *Bd. of Educ. v. Zimmer–Rubert,* 409 Md. 200, 215, 973 A.2d 233, 242 (2009) (alteration in original)). We presume that the Legislature intended for each section to be read harmoniously and consistently. *Lockshin,* 412 Md. at 276, 987 A.2d at 29.

We conclude that §§ 9–310.1 and 9–310.2 are unambiguous and that we need look no further than the plain meaning of the statutory language to discern the Legislature's intent. A reading of the plain language indicates that a request for a referral to the Division does not encompass necessarily or implicitly a request by the entity seeking referral for reimbursement. Although the two relevant sections appear consecutively in the Code, we note that they are separate and distinct, without internal cross-references. The County argues nonetheless that it was not required to file an issue with the Commission asking specifically for relief under § 9–310.1 for several reasons.

First, the County argues that there is no statute or regulation that requires a party to file separate issues with the Commission. While that may be true, it seems imperative and intuitive that a party appearing before the Commission needs

to inform the Commission what it is asking the Commission to decide or do. Simply put, if the County wanted reimbursement, it needed to ask the Commission to consider it.

Second, the County points out that § 9–310.1 is not mentioned on the form that it filed with the Commission, nor is there a form available on the Commission's website by which an employer may ask for reimbursement of back benefits. Therefore, the County concludes that it did not need to, or did not have the ability, to file a separate issue requesting reimbursement. Section 9–314 directs the Commission to "adopt regulations that provide for distribution and ready availability of the forms required under this section." [9] Commission regulations provide that the "[f]orms prepared by the Commission under Labor and Employment Article, § 9–314, Annotated Code of Maryland, are mandatory and shall be used for filing claims, notices, requests, or other papers required by the Labor and Employment Article, Title 9, or these regulations." COMAR 14.09.01.02 (2010). A party requesting a hearing before the Commission shall file a request and "shall state with clarity and in detail the facts or matters of law to be determined...." COMAR 14.09.01.14 A(1). The absence of a form for requesting reimbursement, however, does not excuse the County's failure to state with clarity and in detail on the form it used the facts and matters to be determined. Moreover, counsel for the County did not mention § 9–310.1 specifically or reimbursement generally at the 17 April 2007 hearing before the Commission. If the County wanted to ensure that the Commission would consider its request for reimbursement then or ultimately, but was concerned that there was no form, it could have mentioned that concern to the Commission.

The County continues that because the Commission's regulations do not provide specifically that a party must file a request for a hearing under § 9–310.1, it need not do so here. As noted earlier, the regulations require a party to state its

---

9. Section 9–701(1) authorizes the Commission to "adopt reasonable and proper regulations to govern the procedures of the Commission, which shall be as simple and brief as reasonably possible...."

claims and issues with clarity and in detail. COMAR 14.09.01.14. The only way that the Commission would know that the County wanted the Commission to hold a hearing and consider reimbursement of back benefits under § 9–310.1 is to inform the Commission and state with clarity and in detail the facts or matters of law to be considered. The Commission, we assume, does not possess the faculty of clairvoyance to know what the County (or any party) wants, without notice; nor appreciate necessarily that when it is asked to hold a hearing to consider referral to the Division, as provided for in § 9–310.2, it also is being asked *sub silentio* to consider reimbursement as provided for in § 9–310.1.

The County relies on *Dove v. Montgomery County Board of Education*, 178 Md.App. 702, 943 A.2d 662 (2008), in this regard. In *Dove*, the claimant filed with the Commission a request for modification of an award. The Board of Education argued that Dove's request was invalid because she did not file all of the necessary medical documentation with her request, as required by COMAR 14.09.01.14 and 14.09.01.14(A)(2) & (E). The Court of Special Appeals "read nothing in these regulations to require that a claimant file all supporting documentation with a request for modification of an award." *Id.* at 716, 943 A.2d at 669. Furthermore, the intermediate appellate court found it relevant that "the forms adopted by the Commission to implement this regulation ... do not mandate the filing of medical documentation." *Id.* at 716, 943 A.2d at 670. *Dove* is inapposite to the present case. It appears that Dove requested expressly a modification of an award and filed the corresponding form provided by the Commission. Dove, unlike the County in the instant matter, did not expect the Commission to engage in guesswork to determine the gamut of internalized wishes harbored by the County.

The County contends next that, because the identical standard of proof, namely, preponderance of the evidence, appears in each of the relevant statutory sections, the same evidence and testimony could lead the Commission to find fraud or to determine that the benefits were wrongfully obtained by

virtue of omitting evidence that affected the finding of causation. This tack fails for several reasons. It is true that, under § 9–310.1 and § 9–310.2, the applicable standard of proof is preponderance of the evidence. That, however, does not justify the County's leap in logic that the two sections are one and the same. Significantly, § 9–310.2 does not refer to reimbursement nor does it provide for remuneration of wrongfully obtained funds or any other penalty, other than referral to the Division. Action by the Division on referral does not appear to be a condition precedent to consideration of a claim for reimbursement under § 9–310.1.

Under § 9–310.1, the Commission may order a person to pay reimbursement "if it is established by a preponderance of the evidence that a person has knowingly obtained benefits under this title to which the person is not entitled...." Thus, the party seeking reimbursement need only show that the person knowingly obtained benefits to which they were not entitled. Under § 9–310.2, "if it is established by a preponderance of the evidence that a person knowingly affected or knowingly attempted to affect the payment of compensation, fees, or expenses under this title by means of a fraudulent representation, the Commission shall refer the case" to the Division. Section 9–310.2 requires proof of scienter and a *fraudulent representation.* Section 9–310.1, in contrast, requires only that the person knowingly obtained benefits to which they were not entitled. Although a party seeking relief under each section must prove the required elements by a preponderance of the evidence, the two sections require proof of different elements. We agree with the Court of Special Appeals when it stated in its opinion in the present case that "[i]f the County's position were correct, there would be no reason for the Legislature to enact the two distinct statutory provisions; one of the provisions necessarily would be rendered superfluous, which is at odds with the principles of statutory construction." 187 Md.App. at 540, 979 A.2d at 224. Accordingly, for the foregoing reasons, we hold that a request for a hearing for a referral to the Division under § 9–310.2 does not encompass automatically, necessarily, or implic-

itly a request for reimbursement for benefits wrongfully paid under § 9–310.1.

The County presses on, in the alternative, that if the Commission's decision did not deny it a benefit, it is not necessary that, for purposes of authorizing judicial review, an order grant or deny a benefit under the Workers' Compensation Act. In support of this contention, the County launches another MIRV of arguments.[10]

The Court of Special Appeals, in its opinion in the present case, held that *Paolino, Murray,* and *Havenner* "do not necessarily foreclose an appeal under the circumstances attendant here, concerning a statute enacted long after the decisions were rendered...." 187 Md.App. at 547, 979 A.2d at 228. Because the Commission's decision not to refer Willis to the Division "fully and finally resolved the question of whether the employer showed, by a preponderance of the evidence, that Willis 'knowingly affected or knowingly attempted to affect the payment of compensation, fees, or expenses ... by means of a fraudulent representation[,]....'" the Commission's decision was final and the County was aggrieved. *Id.* (alterations in original). The intermediate appellate court deemed it relevant that "when the Legislature enacted L.E. § 9–310.1 and L.E. § 9–310.2, it did not signal an intent to preclude judicial review of decisions rendered by the Commission under those provisions." *Id.* The absence of such an intent and the fact that "the Legislature enacted L.E. § 9–310.1 and L.E. § 9–310.2 to discourage fraud, and to deter employees from abusing the privileges afforded under the Workers' Compensation Act ... and to protect employer/insurers and the public by helping to assure the integrity of the workers' compensation system," led our appellate colleagues to conclude that to preclude judicial review of the Commis-

---

**10.** For readers who did not live through the Cold War, "MIRV" is the acronym for "multiple independently targetable re-entry vehicle." A MIRV, thus, was a single missile carrying multiple warheads, usually of the nuclear variety.

sion's decision whether to grant or deny a referral request would thwart those purposes. *Id.* at 548–49, 979 A.2d at 229.

The County echoes naturally the intermediate appellate court's reasoning. Of course, it is true that the General Assembly enacted § 9–737 when it enacted the Labor and Employment Article in 1991, after the aforementioned court decisions were rendered. Section 9–737, however, was not enacted "long after," as the Court of Special Appeals stated, all of the decisions were rendered. *See Willis,* 187 Md.App. at 547, 979 A.2d at 228. For example, we decided *Paolino* in 1989, only two years before the General Assembly enacted § 9–737.

The County overlooks that, in addition to the fact that the Court of Special Appeals, in *Sautter,* reiterated the grant/denial of benefits appealability requirement of Commission decisions since the enactment of § 9–737, the codification of the Workers' Compensation Act in the Labor and Employment Article is not the first statutory incarnation of Workers' Compensation law in Maryland. The General Assembly first enacted a workers' compensation law in 1914. *See* 1914 Md. Laws Ch. 800; Theodore B. Cornblatt, Maryland Workers' Compensation Manual § 1–1 (2009). Pertinent to the present case, that law contained the predecessor to § 9–737. The 1914 Act authorized appeals from a decision of what was then called the Workmen's Compensation Commission. 1914 Md. Laws Ch. 800, § 55. That section provided:

> Any employer, employee, beneficiary, or person feeling aggrieved by any decision of the Commission affecting his interests under this Act, may have the same reviewed by a proceeding in the nature of an appeal and initiated in the Circuit Court of the County or in the Common Law Courts of Baltimore City....

*Id.* When the General Assembly enacted the Labor and Employment Article in 1991, the Legislature included a Revisor's Note to § 9–737, which indicated that § 9–737 is derived from the former statute authorizing judicial review of Commission decisions. It states that "[t]his section is new language de-

rived from the first clause of the second sentence and, as it related to authorizing an appeal, the first clause of the first sentence of former Art. 101, § 56(a), and, as it related to appeals, the first sentence of § 95." 1991 Md. Laws Ch. 8. Although the statute authorizing the right to seek judicial review was re-codified in the "new" Labor and Employment Article with slightly different language, we see no reason why the cases decided before the enactment of the Labor and Employment Article do not remain good law for present purposes.

In *Paolino v. McCormick & Co.*, we considered whether a party to a workers' compensation case could appeal from a judgment wholly in its favor. Paolino sought compensation for temporary total disability. The employer argued that the statute of limitations barred her claim. The Commission found that the statute of limitations did not bar her claim, but nevertheless rejected her claim for other reasons. Paolino petitioned for judicial review in the Circuit Court and McCormick purported to cross-appeal from the Commission's ruling on limitations. The Circuit Court granted partial summary judgment in favor of Paolino on the limitations issue, but ultimately entered judgment in favor of McCormick. McCormick appealed to the Court of Special Appeals raising the limitations issue. The intermediate appellate court held that the statute of limitations barred Paolino's claim. This Court held that McCormick lacked the ability to appeal to the Circuit Court because the Commission's order was wholly favorable to McCormick. 314 Md. at 579, 582, 552 A.2d at 869, 871. The decision denying temporary total disability was "the one by which [the Commission] disposed of the case then before it.... That determination and only that determination was the Commission's final action for purposes of appeal." *Id.* at 583, 552 A.2d at 871. In so holding, we relied on language from a Court of Special Appeals case, *Havenner*, where that court discussed the two essential elements of a final order in the context of a Workers' Compensation claim:

"'[F]inal order' or 'final action,' within the ambit of the Workmen's Compensation Law, means an order or award

made by the Commission in the matter then before it, determining the issues of law and of fact necessary for a resolution of the problem presented in that particular proceeding *and* which grants or denies some benefit under the Act."

*Id.* at 583, 552 A.2d at 872 (alterations and emphasis in original) (quoting *Havenner,* 33 Md.App. at 332, 364 A.2d at 99). The only part of the order granting or denying a benefit "was the portion denying temporary total disability. For appeal purposes, that was the Commission's decision." *Id.*

In *Murray International Freight Corp. v. Graham,* we considered whether an employer is estopped collaterally from relitigating a Commission determination of the employment status of a claimant. In a separate, but related proceeding, the Commission determined that Graham was the employee of Murray, but denied his claim for workers' compensation benefits. When Graham brought a separate action in the District Court of Maryland seeking to recover workers' compensation premiums that the corporation had deducted from his pay, in violation of the then extant Maryland Code (1957, 1986 Repl. Vol.), Art. 101, § 51,[11] Murray attempted to argue that Graham was not in its employ at the time he sustained an injury. The District Court held that the employer was estopped collaterally from challenging the Commission's finding that Graham was an employee.

This Court held that the determination of whether Graham was an employee was not essential to the resolution of Graham's claim for compensation and, more importantly for present purposes, "Murray International could not have appealed from that 'judgment.'" 315 Md. at 550, 555 A.2d at 505. Because the Commission denied Graham's claim, it denied the

---

11. Art. 101, § 51 provided, in relevant part that

[n]o agreement by such employee to pay any portion of the premium paid by such employer shall be valid, and any employer who deducts any portion of such premium from the wages or salary of any employee entitled to the benefits of this article shall be guilty of a misdemeanor.

315 Md. at 547 n. 1, 555 A.2d at 503 n. 1.

employee any benefits under the Act and was, therefore, a decision wholly in the employer's favor. *Id.* at 552, 555 A.2d at 506. Thus, following *Paolino* and the denial/grant of benefits language from *Havenner*, we held that issue preclusion did not apply because the employer could not have appealed from the Commission's decision. *Id.* at 552–53, 555 A.2d at 506–07. "It thus denied the employee any benefits under the Act and was, therefore, wholly in the employer's favor." *Id.* at 553, 555 A.2d at 507. We held further that the Commission's finding that Graham was an employee of Murray did not confer a "benefit," as that word was used in *Paolino* and *Havenner*. *Id.* at 553 n. 6, 555 A.2d at 506 n. 6. Because the Commission could not enforce § 51,[12] "a Commission determination of employee status cannot, by itself, confer any benefit under that Article." *Id.*

The Court of Special Appeals also emphasized the requirement that a final appealable order of the Commission must grant or deny a benefit in *Frederick County Bd. of Comm'rs v. Sautter*, 123 Md.App. at 445–46, 718 A.2d at 688 (quoting *Paolino*, 314 Md. at 583, 552 A.2d at 872). As a threshold matter, the court considered on its own initiative whether the Commission's order denying the employer's request for a rehearing was a final order. *Id.* at 445, 718 A.2d at 688. The court relied upon *Paolino* and held that it was a final order because the Commission found "that the claimant sustained an accidental injury arising out of and in the course of employment to meet this definition of benefit. By virtue of such a finding, the employer becomes liable for providing the claimant with medical services and treatment." *Id.* at 446, 718 A.2d at 688.

More recently, in *Griggs v. C & H Mechanical Corp.*, 169 Md.App. 556, 564, 905 A.2d 402, 406 (2006), the Court of Special Appeals considered the requirement that a final appealable order of the Commission must grant or deny a benefit. In *Griggs*, the claimant filed his compensation claim

---

12. *See supra* note 11.

over two years after he sustained an injury, and, thus fell outside of the statute of limitations. The employer raised the limitations argument before the hearing and after in a timely request for a rehearing, but the Commission did not address limitations. The employer petitioned for judicial review in the Circuit Court, complaining only about the order denying a rehearing. The Circuit Court entered judgment in favor of the employer. Griggs appealed to the intermediate appellate court arguing, *inter alia,* that the order denying the request for a rehearing was not an appealable order "because it does not grant or deny some benefit under the workers' compensation laws...." *Id.* at 563, 905 A.2d at 406. The court rejected that argument at the outset because it was obvious that the employer appealed from the Commission's original order in which the Commission found that Griggs sustained an accidental injury and was entitled to compensation under the Act. *Id.* The court reiterated that "both the statutes and case law make clear that the 'decision' being challenged on appeal is the final substantive disposition of the workers' compensation claim." *Id.* at 564, 905 A.2d at 406. Concededly, the court did not engage in an extensive analysis of whether the Commission's order granted or denied a benefit, but that omission was understandable because it was obvious that the employer petitioned for judicial review of the order granting or denying compensation for the employee's injury, i.e., a benefit. *See id.* at 563–64, 905 A.2d at 406.

The County argues also that, even if the Commission's decision did not deny the County a benefit, that is irrelevant because when "the appellate courts have referred to the need for a final order to address benefits [it was meant merely] as a means of distinguishing a final decision for purposes of appeal from an interim finding or conclusion. Rather than create a new standard, the courts have reiterated the basic final judgment rule and disfavor of interlocutory appeals." We agree that courts employ the need for a final order to grant or deny benefits as a means of distinguishing a final decision for purposes of appeal from an interlocutory or interim decision. We fail to see how our acceptance of this

principle helps the County's cause here. A decision of the Commission that does not grant or deny a benefit necessarily is an interlocutory or interim order not subject to immediate judicial review.

 Because we have determined that the County did not request reimbursement for back benefits paid to Willis in its request for referral to the Division and that an appealable final administrative order must grant or deny a benefit, the remaining question is whether a request for a referral to the Division is, in and of itself, a final order subject to judicial review.[13] Thus, we must determine whether (1) the Commis-

_____

**13.** The Court of Special Appeals compared the present case to *Maryland–National Capital Park and Planning Comm'n v. Anderson,* 395 Md. 172, 909 A.2d 694 (2006). In *Anderson,* we considered whether the Md.-Nat'l Capital Park and Planning Commission (the "MNCPPC") had the right to seek judicial review after an administrative hearing board issued a finding of "not guilty" as to charges in an administrative complaint that the MNCPPC filed against one of its Park Police employees. We held that the MNCPPC did not have a right to seek judicial review under the Law Enforcement Officer's Bill of Rights ("LEBOR"), Md.Code (2003), Public Safety Article, §§ 3–101—3–113, which stated that " '[a] finding of not guilty terminates the action.' " *Anderson,* 395 Md. at 181, 909 A.2d at 699 (alteration in original). Section 3–109 provides that an aggrieved party may seek judicial review of a disciplinary decision under LEBOR.

MNCPPC contended that it was entitled to judicial review of the board's decision because the Legislature did not preclude expressly review of a not guilty decision. We rejected MNCPPC's argument and held that "[i]f the Legislature intended for 'not guilty' findings to be reviewable, it could have included language to express that intention, rather than stating that the action is terminated." *Id.* at 189, 909 A.2d at 703–04. We were "persuaded that the Legislature intended only for 'guilty' decisions to be reviewable because the Legislature made a finding of guilt a prerequisite for the other requirements needed to render a decision ripe for review. If the Legislature intended otherwise, then it certainly knew how to include the same or similar language when discussing the findings of 'not guilty,' as it did for the findings of 'guilty.' To the contrary, the Legislature expressly stated that a 'not guilty' finding 'terminates the action.' " *Id.* at 190, 909 A.2d at 704.

*Anderson* is inapposite to the present case because there is no analogous section in the Workers' Compensation Act providing for "termination" of an action brought under the Act. If the case has any relevance here, it bolsters the conclusion that there is no right to petition for immediate judicial review of the Commission's decision not

sion's refusal to refer Willis's case to the Division granted or denied a benefit to the County, (2) the County is "aggrieved" pursuant to § 9–737, and (3) whether the Commission's decision disposed finally of the case then before it.

As noted previously, the Commission's decision did not grant or deny a benefit to the County. It merely denied the Commission's request to refer the case to the Division. That decision was not equivalent to what we described in *Murray* as "a grant of an award under [the Workers' Compensation Act], or something equivalent thereto; that is, something awarded by the Commission." *Murray*, 315 Md. at 553 n. 6, 555 A.2d at 506 n. 6. *See also Sautter*, 123 Md.App. at 446, 718 A.2d at 688. In *Sautter*, the Court of Special Appeals viewed "a finding that the claimant sustained an accidental injury arising out of and in the course of employment to meet this definition of benefit. By virtue of such a finding, the employer becomes liable for providing the claimant with medical services and treatment." *Id.* The Commission's decision in the present case was not in the nature of an award of such a benefit. The decision did not require the County to pay for or be liable anew for any treatment that Willis received.

Closely related to the question of whether the decision denied or granted a benefit to the County is whether the County was "aggrieved" by the Commission's decision. The County argues that it is because it is now precluded from seeking reimbursement for benefits that it believes were obtained fraudulently. As discussed *supra*, a request for referral to the Division pursuant to § 9–310.2 is not tantamount to a request for reimbursement pursuant to § 9–310.1. Therefore, the County is not estopped by the present denial from seeking reimbursement. The Legislature enacted § 9–310.2 in 2004 for, *inter alia*, "the purpose of requiring the Commission to refer certain persons to the Insurance Fraud Division under certain circumstances...." 2004 Md. Laws Ch.

---

to refer a case to the Division. If the Legislature so intended, the Legislature knew how to include language providing expressly for that, yet chose not to.

471. If the Division finds fraud, the Division reports the case to the State's Attorney or the Attorney General. Md.Code (1995, 2003 Repl. Vol. & Supp. 2009), Ins. § 2–405(2)(i). There is no indication in either the Workers' Compensation Act or the Insurance Article that referral by the Commission to the Division is the exclusive method of reporting an individual who has committed insurance fraud in the context of a Workers' Compensation case. Considering that § 9–1106 of the Labor and Employment Article subjects a person "who knowingly affect[s] or knowingly attempt[s] to affect payment of compensation, fees, or expenses under this title by means of a fraudulent representation" to criminal penalties, there is no reason to suppose that the referral process through the Commission is the only mechanism for the County to get at Willis's alleged fraud.[14] The County Attorney could advise the Office of the State's Attorney or the State Attorney's General Office that it believes fraud has occurred. A denial of a referral to another state agency to launch its own investigation of the claimant hardly puts the employer "out-of-court." The decision did not foreclose, as a matter of law, any of the County's pecuniary or property rights or affect the County's ability to pursue a claim or defense alternatively.

 Finally, the Commission's decision in the present case does not dispose of the claim. The County still may seek reimbursement pursuant to § 9–310.1 or litigate Willis's request for total temporary disability benefits. We note that "not every administrative order which determines rights and liabilities, or from which legal consequences flow, is final and thus subject to judicial review. Generally, to be final, an administrative order must also 'leave nothing further for the agency to do.'" *Holiday Spas,* 315 Md. at 396, 554 A.2d at 1200 (quoting *Md. Comm'n on Human Relations,* 296 Md. at 56, 459 A.2d at 211). Even though some legal consequences

---

14. Section 9–1106 provides that a person who violates the section is, upon conviction, subject to the penalties of § 7–104 of the Criminal Law Article, which contains general provisions and penalties for the offense of theft. Md.Code (2002 & Supp. 2009), Crim. Law. § 7–104.

may flow from the Commission's decision not to refer the case to the Division, the Commission's decision did not resolve the matter of whether Willis committed fraud, leaving nothing further for the Commission to do. Therefore, we hold that the Commission's decision was not a final order subject to judicial review and that there is no right of judicial review inherent in decisions rendered on requests for referral made under § 9–310.2.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

ADKINS, J., Dissents.

ADKINS, J., dissenting.

I respectfully dissent from the majority opinion for the reasons set forth by judge Hollander, writing for the Court of Special Appeals in this case. *See Montgomery County v. Willis,* 187 Md.App. 514, 979 A.2d 209 (2009). I would affirm the judgment of the Court of Special Appeals.